**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| OsteoMed LLC, | Case No. _1:20-cv-6821_ |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| Stryker Corporation, | |
| Defendant. | |

### PLAINTIFF OSTEOMED LLC'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff OsteoMed LLC ("OsteoMed") files this complaint for patent infringement against Defendant Stryker Corporation ("Stryker") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

### NATURE OF THE ACTION

1. This is a civil action arising under the patent laws of the United States, 35 U.S.C. § 1 et seq., including specifically 35 U.S.C. § 271, based on Stryker's willful infringement of 8,529,608 ("the '608 Patent") (Exhibit A); 9,351,776 ("the '776 Patent") (Exhibit B); 9,763,716 ("the '716 Patent") (Exhibit C); and 10,245,085 ("the '085 Patent") (Exhibit D) (collectively "the Patents-in-Suit").

### THE PARTIES

2. OsteoMed is a Delaware limited liability company with its principle place of business at 3885 Arapaho Road Addison, Texas 75001.

3. Stryker is a Michigan corporation with its principal place of business at 2825 Airview Boulevard, Kalamazoo, Michigan 49002.

1

4.      Upon information and belief, Stryker's unincorporated division, Stryker Foot and Ankle, has a place of business at 350 North Orleans St. Suite 650 S., Chicago, Illinois 60654.

5.      Stryker advertises its Foot and Ankle location in Chicago, Illinois on its website:



6.      Upon information and belief, Stryker customer service support to customers who purchase the Anchorage® CP, Anchorage® 2 CP, and VariAx® 2 plating systems (collectively referred to herein as the "Anchorage CP plating systems") through its location in Chicago, Illinois.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the claims herein arise under the patent laws of the United States, 35 U.S.C. § 1 et seq., including 35 U.S.C. § 271.

8.      This Court has personal jurisdiction over Stryker in this action because Stryker, upon information and belief, has committed acts of infringement within the State of Illinois and within this District through, for example, the sale of the Anchorage CP plating systems in this District.  Stryker regularly transacts business in the State of Illinois and within this District.  Stryker engages in other persistent courses of conduct and derives substantial revenue from products provided in this District and in Illinois, and has purposefully established substantial, systematic,

and continuous contacts within this District and should reasonably expect to be sued in a court in this District. For example, Stryker has an office in this District and offers customer service support to customers who buy the infringing products in this District. Stryker also has a registered agent for service in Illinois. Given these contacts, the Court's exercise of jurisdiction over Stryker will not offend traditional notions of fair play and substantial justice.

9. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), (c) and l400(b). Stryker has regular and established places of business in this District, including at 350 North Orleans St. Suite 650 S., Chicago, Illinois 60654. Stryker has committed acts within this District, giving rise to this action. Stryker continues to conduct business in this District, including one or more acts of making, selling, importing and/or offering for sale infringing products or providing support service to Stryker's customers in this District.

## FACTUAL BACKGROUND

10. OsteoMed is a leading global innovator, developer, manufacturer and marketer of specialty medical devices, surgical implants, and powered surgical instruments.

11. OsteoMed was founded in 1990 in Glendale, California by Rick Buss, a medical device sales representative, and Jim Lafferty, a medical device engineer. The company was founded on the principle of close collaboration between the company and doctors, with products made to their specifications. In the mid-1990s, OsteoMed relocated to Addison, Texas, seeking a more central location for product distribution.

12. OsteoMed focuses on meeting the needs of surgeons and their patients by developing and delivering innovative, technically advanced, quality products focused on improving patient outcomes.

13.     OsteoMed provides a variety of implantable devices used in foot and ankle surgery, including its ExtremiLOCK™ Foot Plating System.

14.     The ExtremiLOCK™ Foot Plating System includes the latest in variable angled locking screw and plate technology to treat multiple reconstructive and trauma applications of the forefoot, midfoot, and hindfoot.  The ExtremiLOCK™ Foot Plating System features double-lead screws which allow for faster insertion and reduced O.R. time.  Specialized instrumentation complete this comprehensive system which allows for multiple intra-operative options to better treat the indication.

15.     "The metatarso-phalangeal joint is a joint between a metatarsal bone of the foot and the proximal phalanx of a toe.  It is common, particularly in sports, for the first metatarso-phalangeal joint (e.g., the metatarso-phalangeal joint of the big toe) to be injured as a result of trauma to or hyper extension of the big toe.  In other scenarios, degradation of the metatarso-phalangeal joint may be caused by arthritis."  Ex. A, '608 Patent at 3:14–20.

16.     While minor injuries to the metatarso-phalangeal joint may often be treated using conservative measures such as immobilization and icing of the toe, accompanied by rest and anti-inflammatory medication, severely damaged metatarso-phalangeal joint may require a bone plate that is laid across the joint.  *See id.* at 3:20–45.

17.     "The plate may then be screwed to the bones of the joint to hold them in alignment next to one another, enabling the joint fuse.  However, when a load is placed upon the joint (e.g., when weight is placed upon the foot) it is possible for the plate to bend or break above the joint.  This may cause the bones of the joint to fall out of approximation, resulting in a non-union (e.g., a failed fusion of the joint).  Consequently, the ability to rigidly hold the bones of a joint in tight

4

approximation without bending or breaking is one metric for judging the effectiveness of a joint-fixation plate." *Id.* at 3:45–55.

## OsteoMed's Solution – Use of a Transfixation Screw

18.      In early 2009, OsteoMed began investigating the use of a transfixation screw to "increase the durability and reliability of a joint-fixation plate." *Id.* at 3:56–59.

19.      OsteoMed found that "once the transfixation screw is screwed across the joint, it may absorb some of the stress that would otherwise be exerted on the plate when a load is placed upon the joint.  This may reduce the strain on the plate, increasing its reliability and durability.  Additionally, while the plate may provide lateral support for the joint, the transfixation screw may hold the bones of the joint in tight approximation, increasing the likelihood of a positive fusion of the joint.  This may be particularly important on the plantar side of the joint due to tensile stresses exerted on that side of the joint when loaded." *Id.* at 3:59–4:2.

20.      On April 28, 2009, Lance Terrill, an engineer specializing in orthopedic applied research and product development, and Dr. Bruce Werber, DPM, a Board-Certified reconstructive foot and ankle surgeon, filed U.S. Patent Application No. 12/431,017, which later issued as the '608 Patent on September 10, 2013.

21.      The claims of the '608 Patent are directed to "[a] plate for securing bones together across an intermediate joint [that includes] a transfixation screw hole." *Id.* at cl. 11.

22.      On August 30, 2013, U.S. Patent Application No. 14/015,900 was filed, which claimed priority to U.S. Patent Application No. 12/431,017, and eventually issued as the '776 Patent on May 31, 2016.

5

23. On May 5, 2016, U.S. Patent Application No. 15/147,828 was filed, which claimed priority to U.S. Patent Application Nos. 14/015,900 and 12/431,017, and eventually issued as the '716 Patent on September 19, 2017.

24. On September 18, 2017, U.S. Patent Application No. 15/707,891 was filed, which claimed priority to U.S. Patent Application Nos. 15/147,828, 14/015,900, and 12/431,017, and eventually issued as the '085 Patent on April 2, 2019.

25. OsteoMed received FDA approval for its first foot plating system in 2009. Ex. E. The ExtremiLOCK™ Foot Plating System received FDA approval in June 2013. Ex. F.

26. Many of the plates that are part of the ExtremiLOCK™ Foot Plating System include the use of a transfixation screw to secure two bones together across a joint:



Ex. G at 5.

**Stryker's Infringing Products**

27. Stryker is a global medical device company that manufactures and sells implants used in joint replacement and trauma surgeries; surgical equipment and surgical navigation systems; endoscopic and communications systems; patient handling and emergency medical equipment; neurosurgical, neurovascular, and spinal devices; as well as other medical device products used in a variety of medical specialties.

28. Stryker has a line of implantable devices used in foot and ankle surgery, the Anchorage CP plating systems.

6

29.     The Anchorage CP plating system can be used to treat a first metatarso-phalangeal joint by fusing the first metatarsal and proximal phalanx.  The Anchorage CP plating system utilizes a transfixation screw to secure two bones together across a joint:



Ex. H at 27; Ex. I at 13; *see also* Ex. J at 2.

## COUNT I

### (Infringement of the '608 Patent)

30.     OsteoMed incorporates by reference and realleges each and every allegation of Paragraphs 1 through 29 as if set forth herein.

31.     OsteoMed owns all substantial rights, interest, and title in and to the '608 Patent, including the sole and exclusive right to prosecute this action and enforce the '608 Patent against infringers, and to collect damages for all relevant times.

32. The '608 Patent generally directed to "[a] system for securing bones together across a joint [that] includes a transfixation screw and a plate." Ex. A, '608 Patent at Abstract.

33. Stryker has made, had made, imported, supplied, distributed, sold, and/or offered for sale the Anchorage CP plating systems in this District and elsewhere in the United States.

34. As set forth below, Stryker directly infringes at least claim 11 of the '608 Patent, either literally or under the doctrine of equivalents, by making, having made, importing, supplying, distributing, selling (directly or through intermediaries), and/or offering for sale, the Anchorage CP plating systems.

35. For example, Stryker has infringed claim 11 of the '608 Patent, which recites as follows:

> 11. A plate for securing two discrete bones together across an intermediate joint, comprising:
>
> an elongate spine having:
>
> > a first end comprising:
> >
> > > at least one fixation point for attaching the first end to a first discrete bone on a first side of a joint; and
> > >
> > > a first inner surface configured to substantially conform with a geometry of the first bone;
> >
> > a second end comprising:
> >
> > > at least one fixation point for attaching the second end to a second discrete bone on a second side of the joint; and
> > >
> > > a second inner surface configured to substantially conform with a geometry of the second bone; and
> >
> > a bridge portion disposed between the first end and the second end, the bridge portion configured to span across the joint; and
>
> a transfixation screw hole disposed along the spine, the transfixation screw hole comprising an inner surface configured to direct a transfixation screw through the transfixation screw hole such that the transfixation screw extends alongside the bridge portion at a trajectory configured to pass

through a first position on the first bone and a second position on the second bone once the plate is placed across the joint, enabling said screw to absorb tensile load when the second bone is loaded permitting transfer of the tensile load through said screw into said bridge, wherein at least a portion of said bridge portion and said transfixation screw hole has a thickness greater than at least a portion of said first and second ends.

36.     The Anchorage CP plating system is "a plate for securing two discrete bones together across an intermediate joint" as required by claim 11 of the '608 Patent:





37.     The Anchorage CP plating system has "a plate [] comprising an elongate spine" as required by claim 11 of the '608 Patent:



38.     The Anchorage CP plating system has "a plate [] having a first end comprising: at least one fixation point for attaching the first end to a first discrete bone on a first side of a joint; and a first inner surface configured to substantially conform with a geometry of the first bone" as required by claim 11 of the '608 Patent:



1st end with fixation point

1st inner surface configured to substantially conform with a geometry of the first bone

39.   The Anchorage CP plating system has "a plate [] having [] a second end comprising: at least one fixation point for attaching the second end to a second discrete bone on a second side of the joint; and a second inner surface configured to substantially conform with a geometry of the second bone" as required by claim 11 of the '608 Patent:



2nd end with fixation point

2nd inner surface configured to substantially conform with a geometry of the second bone

40.     The Anchorage CP plating system has "a plate [] having [] a bridge portion disposed between the first end and the second end, the bridge portion configured to span across the joint" as required by claim 11 of the '608 Patent:



41.     The Anchorage CP plating system has "a plate [] having [] a transfixation screw hole disposed along the spine, the transfixation screw hole comprising an inner surface configured to direct a transfixation screw through the transfixation screw hole such that the transfixation screw extends alongside the bridge portion at a trajectory configured to pass through a first position on the first bone and a second position on the second bone once the plate is placed across the joint, enabling said screw to absorb tensile load when the second bone is loaded permitting transfer of the tensile load through said screw into said bridge" as required by claim 11 of the '608 Patent:



42.    The Anchorage CP plating system has "a plate having [] a bridge portion [] wherein at least a portion of said bridge portion and said transfixation screw hole has a thickness greater than at least a portion of said first and second ends" as required by claim 11 of the '608 Patent:



43. Stryker's infringement of the '608 Patent has caused, and will continue to cause, OsteoMed to suffer substantial and irreparable harm.

44. Stryker's infringement of the '608 Patent will result in loss of market share for OsteoMed's ExtremiLOCK™ Foot Plating System. Such losses cannot be adequately compensated for in money damages.

45. Upon information and belief, Stryker's infringement of the '608 Patent will expose OsteoMed to loss of pricing discretion for OsteoMed's ExtremiLOCK™ Foot Plating System and price erosion whose magnitude and adverse effects cannot be adequately compensated for in money damages.

46. Stryker's infringement of the '608 Patent has disrupted, and will disrupt, OsteoMed's customer relationships. Such disruption will result in the formation of customer relationships between Stryker and OsteoMed's existing customers, the adverse effects of which cannot be adequately compensated for in money damages.

47.     Thus, Stryker is liable to OsteoMed in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

48.     Stryker has been aware that it infringes the '608 Patent since at least September 2, 2020.

49.     Stryker's infringement of the '608 Patent is, has been, and continues to be, willful, intentional, deliberate, and/or in conscious disregard of OsteoMed's rights under the '608 Patent.

## COUNT II

### (Infringement of the '776 Patent)

50.     OsteoMed incorporates by reference and realleges each and every allegation of Paragraphs 1 through 49 as if set forth herein.

51.     OsteoMed owns all substantial rights, interest, and title in and to the '776 Patent, including the sole and exclusive right to prosecute this action and enforce the '776 Patent against infringers, and to collect damages for all relevant times.

52.     The '776 Patent generally directed to "[a] system for securing bones together across a joint [that] includes a transfixation screw and a plate."  Ex. B, '776 Patent at Abstract.

53.     Stryker has made, had made, imported, supplied, distributed, sold, and/or offered for sale the Anchorage CP plating systems in this District and elsewhere in the United States.

54.     As set forth below, Stryker directly infringes at least claim 1 of the '776 Patent, either literally or under the doctrine of equivalents, by making, having made, importing, supplying, distributing, selling (directly or through intermediaries), and/or offering for sale, the Anchorage CP plating systems.

55.     For example, Stryker has infringed claim 1 of the '776 Patent, which recites as follows:

1. A system for securing two discrete bones together across a joint between the two bones, comprising:

an elongate spine having:

a first end comprising:

at least one fixation point for attaching the first end to a first discrete bone on a first side of an intermediate joint; and

a first inner surface configured to substantially conform with a geometry of the first discrete bone;

a second end comprising:

at least one fixation point for attaching the second end to a second discrete bone on a second side of the joint; and

a second inner surface configured to substantially conform with a geometry of the second discrete bone; and

a bridge portion disposed between the first end and the second end, the bridge portion configured to span across the joint, at least a portion of said bridge portion having a depth greater than at least a portion of the depth of either the first end or the second end; and

a transfixation screw hole disposed along the spine, the transfixation screw hole comprising an inner surface configured to direct the transfixation screw through the transfixation screw hole such that the transfixation screw extends the bridge portion at a trajectory configured to pass through a first position on the first discrete bone, a portion of the joint, and a second position on the second discrete bone once the plate is placed across the joint; and

a transfixation screw comprising a head configured to abut the inner surface of the transfixation screw hole and a shaft configured to contiguously extend through the first discrete bone, through the joint, and into the second discrete bone so as to absorb tensile load when the second discrete bone is loaded relative to the first discrete bone thereby transferring the tensile load from the second discrete bone, through the screw into said head and said bridge portion.

56.     The Anchorage CP plating system is "a system for securing two discrete bones together across a joint between the two bones" as required by claim 1 of the '776 Patent:



57.     The Anchorage CP plating system has "an elongate spine" as required by claim 1 of the '776 Patent:



58.     The Anchorage CP plating system has "a first end comprising: at least one fixation point for attaching the first end to a first discrete bone on a first side of an intermediate joint; and a first inner surface configured to substantially conform with a geometry of the first discrete bone" as required by claim 1 of the '776 Patent:



59. The Anchorage CP plating system has "a second end comprising: at least one fixation point for attaching the second end to a second discrete bone on a second side of the joint; and a second inner surface configured to substantially conform with a geometry of the second discrete bone" as required by claim 1 of the '776 Patent:



60.   The Anchorage CP plating system has "a bridge portion disposed between the first end and the second end, the bridge portion configured to span across the joint, at least a portion of said bridge portion having a depth greater than at least a portion of the depth of either the first end or the second end" as required by claim 1 of the '776 Patent:



61.   The Anchorage CP plating system has "a transfixation screw hole disposed along the spine, the transfixation screw hole comprising an inner surface configured to direct the transfixation screw through the transfixation screw hole such that the transfixation screw extends the bridge portion at a trajectory configured to pass through a first position on the first discrete bone, a portion of the joint, and a second position on the second discrete bone once the plate is placed across the joint" as required by claim 1 of the '776 Patent:



62.     The Anchorage CP plating system has "a transfixation screw comprising a head configured to abut the inner surface of the transfixation screw hole and a shaft configured to contiguously extend through the first discrete bone, through the joint, and into the second discrete bone so as to absorb tensile load when the second discrete bone is loaded relative to the first discrete bone thereby transferring the tensile load from the second discrete bone, through the screw into said head and said bridge portion" as required by claim 1 of the '776 Patent:



63. Stryker's infringement of the '776 Patent has caused, and will continue to cause, OsteoMed to suffer substantial and irreparable harm.

64. Stryker's infringement of the '776 Patent will result in loss of market share for OsteoMed's ExtremiLOCK™ Foot Plating System. Such losses cannot be adequately compensated for in money damages.

65. Upon information and belief, Stryker's infringement of the '776 Patent will expose OsteoMed to loss of pricing discretion for OsteoMed's ExtremiLOCK™ Foot Plating System and price erosion whose magnitude and adverse effects cannot be adequately compensated for in money damages.

66. Stryker's infringement of the '776 Patent has disrupted, and will disrupt, OsteoMed's customer relationships. Such disruption will result in the formation of customer relationships between Stryker and OsteoMed's existing customers, the adverse effects of which cannot be adequately compensated for in money damages.

67. Thus, Stryker is liable to OsteoMed in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

68. Stryker has been aware that it infringes the '776 Patent since at least September 2, 2020.

69. Stryker's infringement of the '776 Patent is, has been, and continues to be, willful, intentional, deliberate, and/or in conscious disregard of OsteoMed's rights under the '776 Patent.

## COUNT III

### (Infringement of the '716 Patent)

70.     OsteoMed incorporates by reference and realleges each and every allegation of Paragraphs 1 through 69 as if set forth herein.

71.     OsteoMed owns all substantial rights, interest, and title in and to the '716 Patent, including the sole and exclusive right to prosecute this action and enforce the '716 Patent against infringers, and to collect damages for all relevant times.

72.     The '716 Patent generally directed to "[a] system for securing bones together across a joint [that] includes a transfixation screw and a plate."  Ex. C, '716 Patent at Abstract.

73.     Stryker has made, had made, imported, supplied, distributed, sold, and/or offered for sale the Anchorage CP plating systems in this District and elsewhere in the United States.

74.     As set forth below, Stryker directly infringes at least claim 1 of the '716 Patent, either literally or under the doctrine of equivalents, by making, having made, importing, supplying, distributing, selling (directly or through intermediaries), and/or offering for sale, the Anchorage CP plating systems.

75.     For example, Stryker has infringed claim 1 of the '716 Patent, which recites as follows:

> 1. A system for securing two discrete bones together across a joint between the two bones, comprising:
>
> an elongate spine having:
>
> a first end comprising:
>
> at least one fixation point for attaching the first end to a first discrete bone on a first side of an intermediate joint; and
>
> a first inner surface configured to substantially conform with a geometry of the first discrete bone;

a second end comprising:

at least one fixation point for attaching the second end to a second discrete bone on a second side of the joint; and

a second inner surface configured to substantially conform with a geometry of the second discrete bone; and

a bridge portion disposed between the first end and the second end, at least a portion of said bridge portion having a depth greater than at least a portion of the depth of either the first end or the second end; and

a transfixation screw hole disposed along the spine, the transfixation screw hole comprising an inner surface configured to direct the transfixation screw through the transfixation screw hole such that the transfixation screw extends the bridge portion at a trajectory configured to pass through a first position on the first discrete bone, a portion of the joint, and a second position on the second discrete bone; and

a transfixation screw comprising a head configured to abut the inner surface of the transfixation screw hole and a shaft configured to contiguously extend through the first discrete bone, through the joint, and into the second discrete bone so as to absorb tensile load when the second discrete bone is loaded relative to the first discrete bone thereby transferring the tensile load from the second discrete bone, through the screw into said head and said bridge portion.

76.     The Anchorage CP plating system is "a system for securing two discrete bones together across a joint between the two bones" as required by claim 1 of the '716 Patent:



77. The Anchorage CP plating system has "an elongate spine" as required by claim 1 of the '716 Patent:



78. The Anchorage CP plating system has "a first end comprising: at least one fixation point for attaching the first end to a first discrete bone on a first side of an intermediate joint; and a first inner surface configured to substantially conform with a geometry of the first discrete bone" as required by claim 1 of the '716 Patent:



79.     The Anchorage CP plating system has "a second end comprising: at least one fixation point for attaching the second end to a second discrete bone on a second side of the joint; and a second inner surface configured to substantially conform with a geometry of the second discrete bone" as required by claim 1 of the '716 Patent:



80.     The Anchorage CP plating system has "a bridge portion disposed between the first end and the second end, at least a portion of said bridge portion having a depth greater than at least a portion of the depth of either the first end or the second end" as required by claim 1 of the '716 Patent:



81. The Anchorage CP plating system has "a transfixation screw hole disposed along the spine, the transfixation screw hole comprising an inner surface configured to direct the transfixation screw through the transfixation screw hole such that the transfixation screw extends the bridge portion at a trajectory configured to pass through a first position on the first discrete bone, a portion of the joint, and a second position on the second discrete bone" as required by claim 1 of the '716 Patent:



82.     The Anchorage CP plating system has "a transfixation screw comprising a head configured to abut the inner surface of the transfixation screw hole and a shaft configured to contiguously extend through the first discrete bone, through the joint, and into the second discrete bone so as to absorb tensile load when the second discrete bone is loaded relative to the first discrete bone thereby transferring the tensile load from the second discrete bone, through the screw into said head and said bridge portion" as required by claim 1 of the '716 Patent:



83.     Stryker's infringement of the '716 Patent has caused, and will continue to cause, OsteoMed to suffer substantial and irreparable harm.

84.     Stryker's infringement of the '716 Patent will result in loss of market share for OsteoMed's ExtremiLOCK™ Foot Plating System.   Such losses cannot be adequately compensated for in money damages.

85.     Upon information and belief, Stryker's infringement of the '716 Patent will expose OsteoMed to loss of pricing discretion for OsteoMed's ExtremiLOCK™ Foot Plating System and price erosion whose magnitude and adverse effects cannot be adequately compensated for in money damages.

86.     Stryker's infringement of the '716 Patent has disrupted, and will disrupt, OsteoMed's customer relationships.  Such disruption will result in the formation of customer relationships between Stryker and OsteoMed's existing customers, the adverse effects of which cannot be adequately compensated for in money damages.

87.     Thus, Stryker is liable to OsteoMed in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

88.     Stryker has been aware that it infringes the '716 Patent since at least September 2, 2020.

89.     Stryker's infringement of the '716 Patent is, has been, and continues to be, willful, intentional, deliberate, and/or in conscious disregard of OsteoMed's rights under the '716 Patent.

## COUNT IV

### (Infringement of the '085 Patent)

90.     OsteoMed incorporates by reference and realleges each and every allegation of Paragraphs 1 through 89 as if set forth herein.

91.     OsteoMed owns all substantial rights, interest, and title in and to the '085 Patent, including the sole and exclusive right to prosecute this action and enforce the '085 Patent against infringers, and to collect damages for all relevant times.

92.     The '085 Patent generally directed to "[a] system for securing bones together across a joint [that] includes a transfixation screw and a plate."  Ex. D, '085 Patent at Abstract.

93.     Stryker has made, had made, imported, supplied, distributed, sold, and/or offered for sale the Anchorage CP plating systems in this District and elsewhere in the United States.

94. As set forth below, Stryker directly infringes at least claim 1 of the '085 Patent, either literally or under the doctrine of equivalents, by making, having made, importing, supplying, distributing, selling (directly or through intermediaries), and/or offering for sale, the Anchorage CP plating systems.

95. For example, Stryker has infringed claim 1 of the '085 Patent, which recites as follows:

> 1. A system for securing a first discrete bone and a second discrete bone together across a joint between the first discrete bone and the second discrete bone, the system comprising:
>
> > a plate comprising:
> >
> > > an elongate spine having a first end comprising at least one attachment point for attaching the first end to the first discrete bone on a first side of the joint, a second end comprising at least one attachment point for attaching the second end to the second discrete bone on a second side of the joint, and a bridge portion disposed between the first end and the second end, the bridge portion having a portion configured to span across the joint, the bridge portion further comprising a thickened portion having a thickness greater than at least a portion of a thickness of either the first end or the second end; and
> > >
> > > an aperture defining a transfixation screw hole disposed along the spine at the thickened portion of the bridge portion, the transfixation screw hole comprising an inner surface configured to direct a transfixation screw through the transfixation screw hole such that the transfixation screw extends at a trajectory configured to pass through a first position on the first discrete bone and a second position on the second discrete bone once the plate is placed across the joint.

96. The Anchorage CP plating system is "a system for securing a first discrete bone and a second discrete bone together across a joint between the first discrete bone and the second discrete bone" as required by claim 1 of the '085 Patent:



97.     The Anchorage CP plating system has "a plate" as required by claim 1 of the '085

Patent:





MTP CP plate          Universal CP plate

Lapidus CP plate      Midfoot CP plate

98.     The Anchorage CP plating system has "a plate [] comprising an elongate spine" as required by claim 1 of the '085 Patent:



Elongate spine

99.     The Anchorage CP plating system has "a plate comprising: an elongate spine having a first end comprising at least one attachment point for attaching the first end to the first discrete bone on a first side of the joint, a second end comprising at least one attachment point for attaching the second end to the second discrete bone on a second side of the joint, and a bridge

portion disposed between the first end and the second end, the bridge portion having a portion configured to span across the joint, the bridge portion further comprising a thickened portion having a thickness greater than at least a portion of a thickness of either the first end or the second end" as required by claim 1 of the '085 Patent:



100. The Anchorage CP plating system has "a plate comprising: [] an aperture defining a transfixation screw hole disposed along the spine at the thickened portion of the bridge portion, the transfixation screw hole comprising an inner surface configured to direct a transfixation screw through the transfixation screw hole such that the transfixation screw extends at a trajectory configured to pass through a first position on the first discrete bone and a second position on the second discrete bone once the plate is placed across the joint" as required by claim 1 of the '085 Patent:



101.    Stryker's infringement of the '085 Patent has caused, and will continue to cause, OsteoMed to suffer substantial and irreparable harm.

102.    Stryker's infringement of the '085 Patent will result in loss of market share for OsteoMed's ExtremiLOCK™ Foot Plating System.  Such losses cannot be adequately compensated for in money damages.

103.    Upon information and belief, Stryker's infringement of the '085 Patent will expose OsteoMed to loss of pricing discretion for OsteoMed's ExtremiLOCK™ Foot Plating System and price erosion whose magnitude and adverse effects cannot be adequately compensated for in money damages.

104.    Stryker's infringement of the '085 Patent has disrupted, and will disrupt, OsteoMed's customer relationships.  Such disruption will result in the formation of customer relationships between Stryker and OsteoMed's existing customers, the adverse effects of which cannot be adequately compensated for in money damages.

105.    Thus, Stryker is liable to OsteoMed in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

106.    Stryker has been aware that it infringes the '085 Patent since at least September 2, 2020.

107.    Stryker's infringement of the '085 Patent is, has been, and continues to be, willful, intentional, deliberate, and/or in conscious disregard of OsteoMed's rights under the '085 Patent.

## DEMAND FOR JURY TRIAL

108.    Pursuant to Federal Rule of Civil Procedure 38, OsteoMed hereby demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, OsteoMed prays for the following judgment and relief against Stryker:

A.      The Court find that Stryker has directly infringed the Patents-in-Suit and hold Stryker liable for such infringement;

B.      The Court issue an order pursuant to 35 U.S.C. § 283 preliminarily and permanently enjoining Stryker, and anyone acting or participating by, through or in concert with Stryker, from infringing the Patents-in-Suit;

C.      The Court award damages pursuant to 35 U.S.C. § 284 adequate to compensate OsteoMed for Stryker's infringement of the Patents-in-Suit, including lost profits and/or a reasonable royalty, such damages to be determined by a jury;

D.      The Court award OsteoMed treble damages as a result of Stryker's willful infringement;

E.      The Court award OsteoMed pre- and post-judgment interest at the maximum rate allowed by law;

F.      The Court declare that this is an exceptional case within the meaning of 35 U.S.C. § 285 and that OsteoMed be awarded its reasonable attorneys' fees, expenses, and costs incurred in connection with this action; and

G.      The Court award such other relief as the Court may deem just and proper.

Dated:  November 17, 2020                    Respectfully submitted,

                                  By:      /s/ Devon C. Beane
                                             Alan L. Barry (IL6180457)
                                             Devon C. Beane (IL6303129)
                                             Katherine L. Allor (IL6317964)
                                           K&L GATES LLP
                                           70 W. Madison St., Suite 3300
                                           Chicago, IL 60602
                                           Telephone: (312) 372-1121
                                           Fax: (312) 827-8000
                                           alan.barry@klgates.com
                                           devon.beane@klgates.com
                                           katy.allor@klgates.com

                                           *Attorneys for Plaintiff OsteoMed LLC*