# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| OSTEOMED LLC, ) | |
| ) | |
| Plaintiff, ) | Case No. 20-cv-6821 |
| ) | |
| v. ) | Hon. Steven C. Seeger |
| ) | |
| STRYKER CORPORATION, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff OsteoMed LLC is suing Defendant Stryker Corp. for patent infringement. Two of Stryker Corp.'s wholly owned subsidiaries, Howmedica Osteonics Corp. ("Howmedica") and Stryker European Operations Holdings LLC ("Stryker European"), filed a motion to intervene. Howmedica seeks to intervene as a defendant and a counterclaim plaintiff, and Stryker European seeks to intervene as a counterclaim plaintiff. For the reasons stated below, the motion to intervene is granted.

### Background

Plaintiff OsteoMed designs, manufactures, and markets medical devices including a "variety of implantable devices used in foot and ankle surgery." *See* Cplt., at ¶¶ 10, 13 (Dckt. No. 1). One of those devices is the "ExtremiLOCK™ Foot Plating System." *Id*. at ¶ 13. Defendant Stryker Corp. also manufactures medical devices. *Id*. at ¶ 27. It produces a competing line of "implantable devices used in foot and ankle surgery" called "the Anchorage CP plating systems." *Id*. at ¶ 28. The systems involve small brackets used to screw bones together.

The case is about whether Stryker Corp.'s Anchorage system infringes patents related to OsteoMed's ExtremiLOCK™ system. *See generally* Cplt. (Dckt. No. 1). OsteoMed filed suit claiming that Stryker Corp. is infringing four patents: (1) 8,529,608 ("the '608 Patent"); (2) 9,351,776 ("the '776 Patent"); (3) 9,763,716 ("the '716 Patent"); and (4) 10,245,085 ("the '085 Patent"). *Id*. at ¶ 1.

Stryker Corp., for its part, answered the complaint and asserted seven counterclaims. *See* Answer to Complaint and Counterclaims (Dckt. No. 20). The first four counterclaims seek a declaration of non-infringement and invalidity of OsteoMed's four patents. *Id.* at Counterclaims I–IV. The next three counterclaims seek to turn the tables, alleging that OsteoMed is infringing two patents, including patent numbers: (1) 9,078,713 ("the '713 Patent"); and (2) 9,168,074 ("the '074 Patent"). *Id.* at Counterclaims V–VII.

Two of Stryker Corp.'s wholly-owned subsidiaries, Howmedica and Stryker European, filed motions to intervene. *See* Mtn. to Intervene (Dckt. No. 19). The intervention is part defense, part offense.

Howmedica seeks to intervene as a defendant. *Id.* at 1. It is the exclusive distributor of the allegedly infringing product, the Anchorage plating system. *Id*. at 5. So, a decision about whether the Anchorage System infringes OsteoMed's patents impacts Howmedica, too. *Id*. at 5–6.

Both Howmedica and Stryker European seek to intervene as counterclaim plaintiffs. When it filed the counterclaims, Stryker Corp. announced that Howmedica and Stryker European (again, its subsidiaries) hope to join the case and bring the counterclaims against OsteoMed, too. *See* Stryker's Counterclaims, at ¶ 1 (Dckt. No. 20) ("Intervenor Applicant Stryker European

Operations Holdings LLC and Intervenor Applicant Howmedica Osteonics Corp. seek to intervene in this action, and thus are included in the allegations below.").

The punchline is that Howmedica and Stryker European hope to enter the fray and join Stryker Corp.'s counterclaims against OsteoMed. But from there, things get a little fuzzy. The pleading (again, entitled "Stryker's Counterclaims") does not make it clear which of the three entities intends to bring which counterclaims. An interested reader who wants more details can burrow into this footnote.[1]

---

[1] In the first paragraph of the counterclaims, Stryker Corp. states that all three entities intend to bring at least some counterclaims: "Intervenor Applicant Stryker European Operations Holdings LLC and Intervenor Applicant Howmedica Osteonics Corp. seek to intervene in this action, and thus are included in the allegations below." *See* Stryker's Counterclaims, at ¶ 1 (Dckt. No. 20). Then, the filing defines the terminology, making clear that the term "Stryker" covers all three entities. "Except as otherwise specified, Stryker Corporation, Stryker European Operations Holdings LLC and Howmedica Osteonics Corp. are referred to collectively as 'Stryker.'" *Id*.

In the section listing the actual counterclaims, the parties state that "Stryker" is bringing each of the seven claims. *See, e.g.*, *id*. at ¶ 41 ("*Stryker* is entitled to judgment by this Court declaring all claims of the '608 patent invalid and/or not infringed by Stryker.") (emphasis added); *id*. at ¶ 108 ("As a result of OsteoMed's infringement of the '713 patent, *Stryker* has suffered damages and will continue to suffer damages. Stryker is entitled to recover damages adequate to compensate for OsteoMed's infringement.") (emphasis added). So, if "Stryker" is bringing all seven claims, and if the definition of "Stryker" includes all three entities, then Stryker Corp., Howmedica, and Stryker European would be bringing all seven claims.

But that reading is in tension with other parts of the document. Other passages suggest that Stryker Corp. (the parent) and Stryker European are bringing only a subset of the counterclaims.

The reply brief suggests that Stryker Corp. (the parent) is bringing only counterclaims I–IV (and is not bringing counterclaims V–VII). "OsteoMed nevertheless seeks to effectively preclude Stryker from asserting counterclaims of infringement by blocking the Stryker entities with ownership interests in those patents from intervening in this case." *See* Reply to Mtn. to Intervene, at 3–4 (Dckt. No. 36). That statement could be read to suggest that Stryker Corp. (the parent) may not have "ownership interests" in the patents asserted in counterclaims V–VII, and therefore may not have standing to bring them.

Paragraph four of the counterclaims implies that Stryker European is only bringing counterclaims V–VII (and is not bringing counterclaims I–IV). "[Stryker European] owns the patent rights asserted in Counterclaims 5-7. [Stryker European]'s motion to intervene for purposes of asserting Counterclaims 5-7 is pending." *Id*. at ¶ 4. Consistent with that statement, the parties do not assert that Stryker European has an interest in the ExtremiLOCK foot system (the product at issue in counterclaims I–IV). If Stryker European has no interest in the ExtremiLOCK system, the validity of the ExtremiLOCK patents is irrelevant to that entity. So, Stryker European would have no standing to bring counterclaims I–IV, and no reason to join.

Viewed a whole, the Court assumes that the three entities intended the following: Stryker brings counterclaims I–IV, Howmedica brings counterclaims I–VII, and Stryker European brings counterclaims V–VII.

The Court reads the counterclaims as follows. Counterclaims I–IV seek a declaration of non-infringement and invalidity with respect to OsteoMed's four patents. *Id.* at ¶¶ 28–87. Stryker Corp. (the parent company) is already in the case as a defendant, and it brings those four counterclaims on its own behalf. One of the two putative intervenors (Howmedica) seeks to join the case as a defendant and to bring counterclaims I–IV, too, because Howmedica is distributing the product that allegedly infringes OsteoMed's patents. *Id.* at ¶¶ 28–87. But the other putative intervenor (Stryker European) does not seek to bring counterclaims I–IV.

Counterclaims V–VII allege that OsteoMed is infringing two patents (the '713 Patent and the '074 Patent). *Id.* at ¶¶ 88–141. Specifically, the counterclaims allege that: (1) OsteoMed is infringing the '713 Patent by producing and selling the ExtremiLOCK system (the original product at issue); (2) OsteoMed is inducing the infringement of the '713 Patent by directing their customers to use a device called the FPS Foot Plating System in a certain manner; and (3) OsteoMed is infringing the '074 Patent by producing and selling a device called the ExtremiFuse™ Hammertoe Fixation System. *Id.* at ¶¶ 91, 113, 132. The rights appear to belong to the two putative intervenors: Stryker European owns the '713 Patent and the '074 Patent, and Howmedica is the exclusive licensee. *Id.* at ¶¶ 4, 5. So the potential intervenors seek to bring counterclaims V–VII. *Id.* at ¶¶ 88–141. But Stryker Corp. does not.

## Discussion

The motion raises questions about both mandatory and permissive intervention. Howmedica and Stryker European argue that they have a right to intervene under Rule 24(a)(2). They also argue that, in the alternative, the Court should permit them to intervene under Rule 24(b)(1)(B). *See* Mtn. to Intervene, at 3, 7 (Dckt. No. 19).

4

I.   **Legal Standard**

"Intervention provides a mechanism for non-parties to protect interests that might otherwise be adversely affected by a trial court judgment." *iWork Software, LLC v. Corp. Express, Inc.*, 2003 WL 22494851, at *1 (N.D. Ill. 2003) (citing *Felzen v. Andreas,* 134 F.3d 873, 874 (7th Cir. 1998)).

Intervention is sometimes mandatory and sometimes permissive. *See* Fed. R. Civ. P. 24(a) ("Intervention of Right"); Fed. R. Civ. P. 24(b) ("Permissive Intervention"). Different rules apply to the two different forms of intervention.

Rule 24(a) describes when a district court "must" allow a party to intervene. *See* Fed. R. Civ. P. 24(a). Rule 24(b) covers when a district court "may" allow a party to intervene. *See* Fed. R. Civ. P. 24(b). The standards differ, but the flexible approach is the same. "In either case, Rule 24 should be liberally construed in favor of potential intervenors." *iWork Software*, 2003 WL 22494851, at *1; *see also* 20 James W. Moore, *Moore's Federal Practice* § 24.03[1][a] (3d ed. 2020) ("Rule 24 is to be construed liberally . . . and doubts should be resolved in favor of the proposed intervenor.").

A court *must* permit a non-party to intervene under Rule 24(a)(2) if the proposed intervenor satisfies four criteria: "(1) timeliness, (2) an interest relating to the subject matter of the main action, (3) at least potential impairment of that interest if the action is resolved without the intervenor, and (4) lack of adequate representation by existing parties." *Reid L. v. Illinois State Bd. of Educ.*, 289 F.3d 1009, 1017 (7th Cir. 2002). Anyone seeking to intervene must satisfy all four requirements, and the burden is on the non-party seeking to join the case. *See Vollmer v. Publishers Clearing House*, 248 F.3d 698, 705 (7th Cir. 2001) (noting that a potential

intervenor "is required to prove each of these four elements," and that "the lack of one element requires that the motion to intervene be denied").

A court *may* permit "anyone" to intervene under Rule 24(b)(1)(B) if "(1) . . . the applicant's claim or defense shares a common question of law or fact with the underlying claim; and (2) independent jurisdiction exists." *Pavlock v. Holcomb*, 337 F.R.D. 173, 180 (N.D. Ind. 2020) (citing *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 775 (7th Cir. 2007)); *see also Davila v. Arlasky*, 141 F.R.D. 68, 73 (N.D. Ill. 1991) ("Federal courts do not have ancillary jurisdiction over the permissive intervenor's claims as they do with intervention as of right. In order to be allowed permissive intervention the [applicants] must establish an independent basis for subject matter jurisdiction.") (citation omitted).

Even if the proposed intervenor satisfies both requirements for permissive intervention, the decision to allow intervention is "wholly discretionary." *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000). A district court must consider whether intervention would cause "undu[e] delay" or would "prejudice" the existing parties. *See* Fed. R. Civ. P. 24(b)(3). Beyond that, the Court's primary concern is "trial convenience." *See* 20 James W. Moore, *Moore's Federal Practice* § 24.10[1] (3d ed. 2020). The Court may also consider factors such as whether allowing the party to intervene would promote judicial efficiency or avoid the possibility of inconsistent outcomes, and whether the additional litigants might "add value" by helping develop relevant factual issues or bringing a unique perspective. *See id.* at § 24.10[2]; *see also Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995) ("Perhaps the most obvious benefits of intervention in general are the efficiency and consistency that result from resolving related issues in a single proceeding.").

**II. Howmedica's Motion to Intervene as a Defendant**

First, Howmedica moves to intervene as a matter of right under Rule 24(a)(2). That motion is denied. Stryker Corp. (its parent) is in the lawsuit as a defendant, and Howmedica has not shown that its parent will fail to adequately represent its interests.

Intervention "requires only a 'minimal' showing of inadequate representation." *Wisconsin Educ. Ass'n Council v. Walker*, 705 F.3d 640, 659 (7th Cir. 2013) (citing *Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538 n.10 (1972)). Even so, "[w]here a prospective intervenor has the same goal as the party to a suit, there is a presumption that the representation in the suit is adequate." *Shea v. Angulo*, 19 F.3d 343, 347 (7th Cir. 1994). "The prospective intervenor then must rebut that presumption and show that some conflict exists." *Wis. Educ. Ass'n Council*, 705 F.3d at 659; *see also iWork Software*, 2003 WL 22494851, at *4 ("Absent conflict between the parties' objectives, no reason to intervene exists.").

Here, Howmedica and Stryker Corp. have the "same goal." *See Shea*, 19 F.3d at 347. They seek a ruling that the Anchorage system does not violate OsteoMed's patents. If Stryker Corp. prevails, Howmedica's interest in continuing to sell the ExtremiLOCK system would be completely vindicated.

To qualify for mandatory intervention, Howmedica must point to a potential conflict of interest between Stryker Corp. and Howmedica (*i.e.,* parent and subsidiary) down the line. But Howmedica fails to identify any possible conflict. *See generally* Mtn. to Intervene, at 5 (Dckt. No. 19). The Court fails to see any potential conflicts, either. After all, the parties share a legal team, which suggests they believe their interests are aligned. *See, e.g.*, *Southmark Corp. v. Cagan*, 950 F.2d 416, 419 (7th Cir. 1991) ("Here petitioner's interests in defeating foreclosure are adequately represented by the receiver, who has the same interests and who is represented by

petitioner's own counsel."); *Clorox Co. v. S.C. Johnson & Son, Inc.*, 627 F. Supp. 2d 954, 962 (E.D. Wis. 2009) (noting that the parties "share[] the same counsel" in denying motion to intervene); *ABS Glob., Inc. v. Inguran, LLC*, 2015 WL 1486647, at *4 (W.D. Wis. 2015) ("This conclusion is further strengthened by the fact that Inguran and XY are represented by the same counsel, strongly suggesting that there is no real (or even foreseeable) conflict of interests between Inguran and its wholly-owned subsidiary XY.").

Howmedica does point out – perhaps in response to this issue – that, if Stryker Corp. prevailed, the parties would receive different benefits. *Id*. at 7. Stryker Corp. could continue manufacturing the Anchorage system, and Howmedica could continue selling it. But that difference makes no difference. If anything, those interests seem aligned. Howmedica wants to continue selling what Stryker Corp. is making, and on the flipside, Stryker Corp. wants to continue making what Howmedica is selling. There is no foreseeable conflict – they are a manufacturing and sales tandem – so intervention under Rule 24(a) is denied.

In the alternative, Howmedica argues that the Court should permit it to intervene under Rule 24(b). That request for permissive intervention is granted.

Howmedica satisfies the two threshold conditions for permissive intervention. Its defense would be identical to Stryker Corp.'s, so it "shares with the main action a common question of law or fact." *See* Fed. R. Civ. P. 24(b)(1)(B). And, because this is a patent case, there is an independent basis for jurisdiction. *See Davila*, 141 F.R.D. at 73 ("In order to be allowed permissive intervention the [applicants] must establish an independent basis for subject matter jurisdiction.") (citation omitted); *see also* 28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . .").

Therefore, the decision is discretionary, and in this case, the factors weigh in favor of permitting Howmedica to intervene.

Allowing Howmedica to intervene as a defendant would not cause undue delay or prejudice any party. *See* Fed. R. Civ. P. 24(b)(3). It's true, as OsteoMed argues, that once Howmedica is permitted to intervene as a defendant, it is allowed to bring additional counterclaims. When a putative intervenor passes through the courthouse doors and becomes a party, it is entitled to bring noncompulsory counterclaims. *See* Fed. R. Civ. P. 13(b). Expanding the case to cover additional patents would make the case more complex. *See* Pl.'s Mtn. in Opposition to Mtn. to Intervene, at 8–10 (Dckt. No. 32).

But so be it. Nothing would be gained – and much would be lost – by splitting the dispute into separate lawsuits. Two lawsuits would take more time and energy than one. Litigating the entire dispute here is better than litigating the same dispute in two different courtrooms, or (worse yet) two different courthouses.

On the other hand, there are a number of potential upsides. For starters, Howmedica is the exclusive licensee of the patents at issue and thus has a major stake in the outcome of this litigation. Including Howmedica will permit the Court to sort out the rights of the three most interested parties in a single proceeding. *See Fisher v. Gillette Co.*, 505 F. Supp. 184, 186 (N.D. Ill. 1981) ("[I]t is highly desirable that in a litigation between the patentee (Fisher) and a major alleged infringer (Gillette), the exclusive licensee with a substantial economic stake in the outcome (Hallmark) should be able to have its own rights adjudicated vis-a-vis both parties."); *iWork Software*, 2003 WL 22494851, at *1 ("Courts . . . have an interest in allowing parties with actual interests in pending litigation to intervene in order to prevent or simplify future litigation involving related claims.") (citing *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d

9

1489, 1493 (9th Cir. 1995); *Reich v. ABC/York–Estes Corp.*, 64 F.3d 316, 322 (7th Cir. 1995)). Further, as exclusive licensee of the four patents at issue, Howmedica might provide additional expertise about the patents and products at issue.

Therefore, the Court holds that Howmedica may intervene as a defendant under Rule 24(b)(1)(B).

### III.     Howmedica's Motion to Intervene as a Counterclaim Plaintiff

The Court's decision to permit Howmedica to intervene as a defendant effectively moots its motion to intervene as a counterclaim plaintiff. Howmedica is now a defendant, and as a party, it can bring counterclaims. *See* Fed. R. Civ. P. 13(b) ("A pleading may state as a counterclaim against an opposing party any claim that is not compulsory.").

### IV.     Stryker European's Motion to Intervene as a Counterclaim Plaintiff

The Court's decision to permit Howmedica to intervene as a defendant, and thus to bring all seven counterclaims, impacts Stryker European's motion to intervene as well. Counterclaims V–VII will be in the suit regardless of how the Court rules on Stryker European's motion. Therefore, the issue is simply whether to allow Stryker European to bring counterclaims V–VII alongside Howmedica.

First, Stryker European moves to intervene as of right under Rule 24(a). This effort falls short. There is no reason to think that Howmedica will not adequately represent the interests of Stryker European. *See Inguran,* 2015 WL 1486647, at *4. Howmedica and Stryker European belong to the same corporate family, and they share the "same goal." *Shea*, 19 F.3d at 347. They seek a ruling that OsteoMed is infringing the '713 Patent and the '074 Patent. If Howmedica succeeds in litigating the counterclaims on its own, Stryker European's interests would be completely vindicated. Stryker European does not point to any conflict of interest.

10

*Wis. Educ. Ass'n Council,* 705 F.3d at 659. The fact that they are represented by the same counsel suggests that their interests are aligned. Therefore, Stryker European has no right to intervene.

However, the Court grants permissive intervention under Rule 24(b). Stryker European satisfies the two threshold conditions. Its counterclaims share a common question of law or fact with the underlying suit. *See* Fed. R. Civ. P. 24(b)(1)(B). In fact, its counterclaims are identical to Howmedica's counterclaims, and the Court has an independent basis of jurisdiction to hear their claims (this is a patent case).

Once again, the discretionary factors cut in favor of permissive intervention. There is no reason to think that intervention would cause undue delay or would prejudice any party. *See* Fed. R. Civ. P. 24(b)(3). Counterclaims V–VII are already in the case because the Court has allowed Howmedica to intervene as a defendant, which triggers the opportunity to advance counterclaims. There is no downside to adding Stryker European to the mix because this Court will hear counterclaims V–VII anyway. But there are upsides. All three entities are in the same corporate family, and they share an interest in resolving this dispute in one proceeding. *See Fisher*, 505 F. Supp. at 186; *iWork Software*, 2003 WL 22494851, at *1. Stryker European might add value, too. It is the assignee of the patents at issue, so it might contribute additional expertise about the patents and products at issue.

## Conclusion

For the foregoing reasons, the motion to intervene is granted.

Date: May 17, 2021

Steven C. Seeger
United States District Judge