**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| OSTEOMED LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:20-cv-6821 |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| STRYKER CORPORATION and | ) | |
| HOWMEDICA OSTEONICS CORP., | ) | |
| | ) | |
| Defendants. | ) | |

| | |
|---|---|
| STRYKER EUROPEAN OPERATIONS HOLDINGS LLC and HOWMEDICA OSTEONICS CORP., | ) ) ) |
| | ) |
| Counterclaim Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| OSTEOMED LLC, | ) |
| | ) |
| Counterclaim Defendant. | ) |

**STRYKER'S AMENDED ANSWER TO COMPLAINT**

Pursuant to this Court's Order dated May 17, 2021, Defendant Stryker Corporation ("Stryker") files this Amended Answer to Plaintiff OsteoMed LLC's ("OsteoMed") Complaint as follows:

**NATURE OF THE ACTION**

1. This is a civil action arising under the patent laws of the United States, 35 U.S.C. § 1 et seq., including specifically 35 U.S.C. § 271, based on Stryker's willful infringement of 8,529,608 ("the '608 Patent") (Exhibit A); 9,351,776 ("the '776 Patent") (Exhibit B); 9,763,716 ("the '716 Patent") (Exhibit C); and 10,245,085 ("the '085 Patent") (Exhibit D) (collectively "the Patents-in-Suit").

**AMENDED ANSWER:**

Stryker admits that this is a civil action under 35 U.S.C. § 1 *et seq.*, including specifically, 35 U.S.C. § 271 for infringement of U.S. Patent Nos. 8,529,608 ("the '608 Patent"); 9,351,776 ("the '776 Patent"); 9,763,716 ("the '716 Patent"); and 10,245,085 ("the '085 Patent"). Except as expressly admitted, Stryker denies all other allegations set forth in paragraph 1 of the Complaint.

## THE PARTIES

2. OsteoMed is a Delaware limited liability company with its principal place of business at 3885 Arapaho Road Addison, Texas 75001.

**AMENDED ANSWER:**

Stryker is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 2 of the Complaint, and, accordingly, denies the allegations set forth in paragraph 2 of the Complaint.

3. Stryker is a Michigan corporation with its principal place of business at 2825 Airview Boulevard, Kalamazoo, Michigan 49002.

**AMENDED ANSWER:**

Stryker admits that it is a Michigan corporation with its principal place of business at 2825 Airview Boulevard, Kalamazoo, Michigan, 49002.

4. Upon information and belief, Stryker's unincorporated division, Stryker Foot and Ankle, has a place of business at 350 North Orleans St. Suite 650 S., Chicago, Illinois 60654.

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 4 of the Complaint.

2

5. Stryker advertises its Foot and Ankle location in Chicago, Illinois on its website:



**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 5 of the Complaint.

6. Upon information and belief, Stryker customer service support to customers who purchase the Anchorage® CP, Anchorage® 2 CP, and VariAx® 2 plating systems (collectively referred to herein as the "Anchorage CP plating systems") through its location in Chicago, Illinois.

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 6 of the Complaint.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the claims herein arise under the patent laws of the United States, 35 U.S.C. § 1 et seq., including 35 U.S.C. § 271.

**AMENDED ANSWER:**

Stryker admits that this Court has subject matter jurisdiction over patent infringement claims pursuant to 28 U.S.C. §§ 1331 and 1338(a). Except as expressly admitted, Stryker denies all other allegations set forth in paragraph 7 of the Complaint.

8. This Court has personal jurisdiction over Stryker in this action because Stryker, upon information and belief, has committed acts of infringement within the State of Illinois and

within this District through, for example, the sale of the Anchorage CP plating systems in this District. Stryker regularly transacts business in the State of Illinois and within this District. Stryker engages in other persistent courses of conduct and derives substantial revenue from products provided in this District and in Illinois, and has purposefully established substantial, systematic, and continuous contacts within this District and should reasonably expect to be sued in a court in this District. For example, Stryker has an office in this District and offers customer service support to customers who buy the infringing products in this District. Stryker also has a registered agent for service in Illinois. Given these contacts, the Court's exercise of jurisdiction over Stryker will not offend traditional notions of fair play and substantial justice.

**AMENDED ANSWER:**

Stryker admits that it is subject to personal jurisdiction in this District for this particular action. Except as expressly admitted, Stryker denies all other allegations set forth in paragraph 8 of the Complaint.

9. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), (c) and 1400(b). Stryker has regular and established places of business in this District, including at 350 North Orleans St. Suite 650 S., Chicago, Illinois 60654. Stryker has committed acts within this District, giving rise to this action. Stryker continues to conduct business in this District, including one or more acts of making, selling, importing and/or offering for sale infringing products or providing support service to Stryker's customers in this District.

**AMENDED ANSWER:**

Stryker admits that venue is technically proper as to Stryker in this District under 28 U.S.C. §§ 1391(b), (c), and 1400(b), but venue is more appropriate in the Western District of Michigan under 28 U.S.C. § 1404. Stryker denies that it has a regular and established place of business at 350 North Orleans St. Suite 650 S., Chicago, Illinois 60654. Except as expressly admitted, Stryker denies all other allegations set forth in paragraph 9 of the Complaint.

## ALLEGED FACTUAL BACKGROUND

10. OsteoMed is a leading global innovator, developer, manufacturer and marketer of specialty medical devices, surgical implants, and powered surgical instruments.

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 10 of the Complaint.

11.     OsteoMed was founded in 1990 in Glendale, California by Rick Buss, a medical device sales representative, and Jim Lafferty, a medical device engineer.  The company was founded on the principle of close collaboration between the company and doctors, with products made to their specifications.  In the mid-1990s, OsteoMed relocated to Addison, Texas, seeking a more central location for product distribution.

**AMENDED ANSWER:**

Stryker is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 11 of the Complaint, and, accordingly, denies the allegations set forth in paragraph 11 of the Complaint.

12.     OsteoMed focuses on meeting the needs of surgeons and their patients by developing and delivering innovative, technically advanced, quality products focused on improving patient outcomes.

**AMENDED ANSWER:**

Stryker is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 12 of the Complaint, and, accordingly, denies the allegations set forth in paragraph 12 of the Complaint.

13.     OsteoMed provides a variety of implantable devices used in foot and ankle surgery, including its ExtremiLOCK™ Foot Plating System.

**AMENDED ANSWER:**

Stryker is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 13 of the Complaint, and, accordingly, denies the allegations set forth in paragraph 13 of the Complaint.

14.     The ExtremiLOCK™ Foot Plating System includes the latest in variable angled locking screw and plate technology to treat multiple reconstructive and trauma applications of the forefoot, midfoot, and hindfoot.  The ExtremiLOCK™ Foot Plating System features double-lead screws which allow for faster insertion and reduced O.R. time.  Specialized instrumentation complete this comprehensive system which allows for multiple intra-operative options to better treat the indication.

**AMENDED ANSWER:**

Stryker is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 14 of the Complaint, and, accordingly, denies the allegations set forth in paragraph 14 of the Complaint.

15.     "The metatarso-phalangeal joint is a joint between a metatarsal bone of the foot and the proximal phalanx of a toe.  It is common, particularly in sports, for the first metatarso-phalangeal joint (e.g., the metatarso-phalangeal joint of the big toe) to be injured as a result of trauma to or hyper extension of the big toe.  In other scenarios, degradation of the metatarso-phalangeal joint may be caused by arthritis."  Ex. A, '608 Patent at 3:14–20.

**AMENDED ANSWER:**

Stryker admits that Exhibit A, attached to OsteoMed's Complaint, purports to be a true and accurate copy of the '608 Patent and states that "[t]he metatarso-phalangeal joint is a joint between a metatarsal bone of the foot and the proximal phalanx of a toe.  It is common, particularly in sports, for the first metatarsophalangeal joint (e.g., the metatarso-phalangeal joint of the big toe) to be injured as a result of trauma to or hyper extension of the big toe.  In other scenarios, degradation of the metatarsophalangeal joint may be caused by arthritis."  Except as expressly admitted, Stryker denies all other allegations set forth in paragraph 15 of the Complaint.

16.     While minor injuries to the metatarso-phalangeal joint may often be treated using conservative measures such as immobilization and icing of the toe, accompanied by rest and anti-inflammatory medication, severely damaged metatarso-phalangeal joint may require a bone plate that is laid across the joint.  *See id.* at 3:20–45.

**AMENDED ANSWER:**

Stryker admits that Exhibit A, attached to OsteoMed's Complaint, purports to be a true and accurate copy of the '608 Patent and generally states that "while minor injuries to the metatarso-phalangeal joint may often be treated using conservative measures such as immobilization and icing of the toe, accompanied by rest and anti-inflammatory medication, severely damaged metatarso-phalangeal joint may require a bone plate that is laid cross the joint."  Except as expressly admitted, Stryker denies all other allegations set forth in paragraph 16 of the Complaint.

17.     "The plate may then be screwed to the bones of the joint to hold them in alignment next to one another, enabling the joint fuse.  However, when a load is placed upon the joint (e.g., when weight is placed upon the foot) it is possible for the plate to bend or break above the joint. This may cause the bones of the joint to fall out of approximation, resulting in a non-union (e.g., a failed fusion of the joint). Consequently, the ability to rigidly hold the bones of a joint in tight approximation without bending or breaking is one metric for judging the effectiveness of a joint-fixation plate." *Id.* at 3:45–55.

**AMENDED ANSWER:**

Stryker admits that Exhibit A, attached to OsteoMed's Complaint, purports to be a true and accurate copy of the '608 Patent and states that "[t]he plate may then be screwed to the bones of the joint to hold them in alignment next to one another, enabling the joint fuse.  However, when a load is placed upon the joint (e.g., when weight is placed upon the foot) it is possible for the plate to bend or break above the joint. This may cause the bones of the joint to fall out of approximation, resulting in a non-union (e.g., a failed fusion of the joint). Consequently, the ability to rigidly hold the bones of a joint in tight approximation without bending or breaking is one metric for judging the effectiveness of a joint-fixation plate."  Except as expressly admitted, Stryker denies all other allegations set forth in paragraph 15 of the Complaint.

**OsteoMed's Alleged Solution – Use of a Transfixation Screw**

18.     In early 2009, OsteoMed began investigating the use of a transfixation screw to "increase the durability and reliability of a joint-fixation plate." *Id.* at 3:56–59.

**AMENDED ANSWER:**

Stryker is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 18 of the Complaint, and, accordingly, denies the allegations set forth in paragraph 18 of the Complaint.

19.     OsteoMed found that "once the transfixation screw is screwed across the joint, it may absorb some of the stress that would otherwise be exerted on the plate when a load is placed upon the joint. This may reduce the strain on the plate, increasing its reliability and durability. Additionally, while the plate may provide lateral support for the joint, the transfixation screw may hold the bones of the joint in tight approximation, increasing the likelihood of a positive fusion of

7

the joint. This may be particularly important on the plantar side of the joint due to tensile stresses exerted on that side of the joint when loaded." *Id*. at 3:59–4:2.

**AMENDED ANSWER:**

Stryker is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 19 of the Complaint, and, accordingly, denies the allegations set forth in paragraph 19 of the Complaint.

20.     On April 28, 2009, Lance Terrill, an engineer specializing in orthopedic applied research and product development, and Dr. Bruce Werber, DPM, a Board-Certified reconstructive foot and ankle surgeon, filed U.S. Patent Application No. 12/431,017, which later issued as the '608 Patent on September 10, 2013.

**AMENDED ANSWER:**

Stryker admits that the '608 Patent issued on September 10, 2013. Stryker denies that the '608 Patent was duly or legally issued. Except as expressly admitted, Stryker denies all other allegations set forth in paragraph 20 of the Complaint.

21.     The claims of the '608 Patent are directed to "[a] plate for securing bones together across an intermediate joint [that includes] a transfixation screw hole." *Id*. at cl. 11.

**AMENDED ANSWER:**

Stryker admits that claim 11 of the '608 Patent recites "A plate for securing two discrete bones together across an intermediate joint [that includes] a transfixation screw hole." Except as expressly admitted, Stryker denies all other allegations set forth in paragraph 21 of the Complaint.

22.     On August 30, 2013, U.S. Patent Application No. 14/015,900 was filed, which claimed priority to U.S. Patent Application No. 12/431,017, and eventually issued as the '776 Patent on May 31, 2016.

**AMENDED ANSWER:**

Stryker admits that the '776 Patent issued on May 31, 2016. Stryker denies that the '776 Patent was duly or legally issued. Stryker admits that on its face, the '776 Patent indicates that

8

U.S. Patent Application No. 14/015,900 was filed on August 30, 2013. Except as expressly admitted, Stryker denies all other allegations set forth in paragraph 22 of the Complaint.

23. On May 5, 2016, U.S. Patent Application No. 15/147,828 was filed, which claimed priority to U.S. Patent Application Nos. 14/015,900 and 12/431,017, and eventually issued as the '716 Patent on September 19, 2017.

**AMENDED ANSWER:**

Stryker admits that the '716 Patent issued on September 19, 2017. Stryker denies that the '716 Patent was duly or legally issued. Stryker admits that on its face, the '716 Patent indicates that U.S. Patent Application No. 15/147,828 was filed on May 5, 2016. Except as expressly admitted, Stryker denies all other allegations set forth in paragraph 23 of the Complaint.

24. On September 18, 2017, U.S. Patent Application No. 15/707,891 was filed, which claimed priority to U.S. Patent Application Nos. 15/147,828, 14/015,900, and 12/431,017, and eventually issued as the '085 Patent on April 2, 2019.

**AMENDED ANSWER:**

Stryker admits that the '085 Patent issued on April 2, 2019. Stryker denies that the '085 Patent was duly or legally issued. Stryker admits that on its face, the '085 Patent indicates that U.S. Patent Application No. 15/707,891 was filed on September 18, 2017. Except as expressly admitted, Stryker denies all other allegations set forth in paragraph 24 of the Complaint.

25. OsteoMed received FDA approval for its first foot plating system in 2009. Ex. E. The ExtremiLOCK™ Foot Plating System received FDA approval in June 2013. Ex. F.

**AMENDED ANSWER:**

Stryker is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 25 of the Complaint, and, accordingly, denies the allegations set forth in paragraph 25 of the Complaint.

26.      Many of the plates that are part of the ExtremiLOCK™ Foot Plating System include the use of a transfixation screw to secure two bones together across a joint:



Ex. G at 5.

**AMENDED ANSWER:**

Stryker is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 26 of the Complaint, and, accordingly, denies the allegations set forth in paragraph 26 of the Complaint.

**Stryker's Allegedly Infringing Products**

27.      Stryker is a global medical device company that manufactures and sells implants used in joint replacement and trauma surgeries; surgical equipment and surgical navigation systems; endoscopic and communications systems; patient handling and emergency medical equipment; neurosurgical, neurovascular, and spinal devices; as well as other medical device products used in a variety of medical specialties.

**AMENDED ANSWER:**

Admitted.

28.      Stryker has a line of implantable devices used in foot and ankle surgery, the Anchorage CP plating systems.

**AMENDED ANSWER:**

Admitted.

29.      The Anchorage CP plating system can be used to treat a first metatarso-phalangeal joint by fusing the first metatarsal and proximal phalanx.  The Anchorage CP plating system utilizes a transfixation screw to secure two bones together across a joint:



Ex. H at 27; Ex. I at 13; *see also* Ex. J at 2.

**AMENDED ANSWER:**

Stryker admits that Exhibit H at page 27 attached to OsteoMed's Complaint purports to be a true and accurate copy of the Lapidus Arthrodesis Operative Technique. Stryker admits that Exhibit I at page 13 attached to OsteoMed's Complaint purports to be a true and accurate copy of the Anchorage 2® CP System Technology. Stryker admits that Exhibit J at page 2 attached to OsteoMed's Complaint purports to be a true and accurate copy of the VariAx® 2 Plating Systems. Except as expressly admitted, Stryker denies all other allegations set forth in paragraph 29 of the Complaint.

**COUNT I**
**(INFRINGEMENT OF THE '608 PATENT)**

30.     OsteoMed incorporates by reference and realleges each and every allegation of Paragraphs 1 through 29 as if set forth herein.

**AMENDED ANSWER:**

Stryker incorporates by reference its responses to the preceding allegations of paragraphs 1-29 as though stated herein.

31.     OsteoMed owns all substantial rights, interest, and title in and to the '608 Patent, including the sole and exclusive right to prosecute this action and enforce the '608 Patent against infringers, and to collect damages for all relevant times.

**AMENDED ANSWER:**

Stryker is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 31 of the Complaint, and, accordingly, denies the allegations set forth in paragraph 31 of the Complaint.

32.     The '608 Patent generally directed to "[a] system for securing bones together across a joint [that] includes a transfixation screw and a plate." Ex. A, '608 Patent at Abstract.

**AMENDED ANSWER:**

Stryker admits that Exhibit A attached to OsteoMed's Complaint purports to be a true and accurate copy of the '608 Patent and states that the '608 Patent is generally directed to "[a] system for securing bones together across a joint [that] includes a transfixation screw and a plate." Except as expressly admitted, Stryker denies all other allegations set forth in paragraph 32 of the Complaint.

33.     Stryker has made, had made, imported, supplied, distributed, sold, and/or offered for sale the Anchorage CP plating systems in this District and elsewhere in the United States.

**AMENDED ANSWER:**

Admitted.

34.     As set forth below, Stryker directly infringes at least claim 11 of the '608 Patent, either literally or under the doctrine of equivalents, by making, having made, importing, supplying, distributing, selling (directly or through intermediaries), and/or offering for sale, the Anchorage CP plating systems.

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 34 of the Complaint.

12

35. For example, Stryker has infringed claim 11 of the '608 Patent, which recites as follows:

11. A plate for securing two discrete bones together across an intermediate joint, comprising:

an elongate spine having:

a first end comprising:

at least one fixation point for attaching the first end to a first discrete bone on a first side of a joint; and

a first inner surface configured to substantially conform with a geometry of the first bone;

a second end comprising:

at least one fixation point for attaching the second end to a second discrete bone on a second side of the joint; and

a second inner surface configured to substantially conform with a geometry of the second bone; and

a bridge portion disposed between the first end and the second end, the bridge portion configured to span across the joint; and

a transfixation screw hole disposed along the spine, the transfixation screw hole comprising an inner surface configured to direct a transfixation screw through the transfixation screw hole such that the transfixation screw extends alongside the bridge portion at a trajectory configured to pass through a first position on the first bone and a second position on the second bone once the plate is placed across the joint, enabling said screw to absorb tensile load when the second bone is loaded permitting transfer of the tensile load through said screw into said bridge, wherein at least a portion of said bridge portion and said transfixation screw hole has a thickness greater than at least a portion of said first and second ends.

**<u>AMENDED ANSWER:</u>**

Stryker denies the allegations set forth in paragraph 35 of the Complaint.

36. The Anchorage CP plating system is "a plate for securing two discrete bones together across an intermediate joint" as required by claim 11 of the '608 Patent:



14

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 36 of the Complaint.

37.     The Anchorage CP plating system has "a plate [] comprising an elongate spine" as required by claim 11 of the '608 Patent:



**AMENDED**                                                                **ANSWER:**

Stryker denies the allegations set forth in paragraph 37 of the Complaint.

38.     The Anchorage CP plating system has "a plate [] having a first end comprising: at least one fixation point for attaching the first end to a first discrete bone on a first side of a joint; and a first inner surface configured to substantially conform with a geometry of the first bone" as required by claim 11 of the '608 Patent:



15

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 38 of the Complaint.

39.     The Anchorage CP plating system has "a plate [] having [] a second end comprising: at least one fixation point for attaching the second end to a second discrete bone on a second side of the joint; and a second inner surface configured to substantially conform with a geometry of the second bone" as required by claim 11 of the '608 Patent:



**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 39 of the Complaint.

40.     The Anchorage CP plating system has "a plate [] having [] a bridge portion disposed between the first end and the second end, the bridge portion configured to span across the joint" as required by claim 11 of the '608 Patent:



**AMENDED ANSWER:**

16

Stryker denies the allegations set forth in paragraph 40 of the Complaint.

41.    The Anchorage CP plating system has "a plate [] having [] a transfixation screw hole disposed along the spine, the transfixation screw hole comprising an inner surface configured to direct a transfixation screw through the transfixation screw hole such that the transfixation screw extends alongside the bridge portion at a trajectory configured to pass through a first position on the first bone and a second position on the second bone once the plate is placed across the joint, enabling said screw to absorb tensile load when the second bone is loaded permitting transfer of the tensile load through said screw into said bridge" as required by claim 11 of the '608 Patent:



**AMENDED ANSWER:**

17

Stryker denies the allegations set forth in paragraph 41 of the Complaint.

42.     The Anchorage CP plating system has "a plate having [] a bridge portion [] wherein at least a portion of said bridge portion and said transfixation screw hole has a thickness greater than at least a portion of said first and second ends" as required by claim 11 of the '608 Patent:



**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 42 of the Complaint.

43.     Stryker's infringement of the '608 Patent has caused, and will continue to cause, OsteoMed to suffer substantial and irreparable harm.

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 43 of the Complaint.

44.     Stryker's infringement of the '608 Patent will result in loss of market share for OsteoMed's ExtremiLOCK™ Foot Plating System.  Such losses cannot be adequately compensated for in money damages.

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 44 of the Complaint.

45.     Upon information and belief, Stryker's infringement of the '608 Patent will expose OsteoMed to loss of pricing discretion for OsteoMed's ExtremiLOCK™ Foot Plating System and price erosion whose magnitude and adverse effects cannot be adequately compensated for in money damages.

18

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 45 of the Complaint.

46.     Stryker's infringement of the '608 Patent has disrupted, and will disrupt, OsteoMed's customer relationships.  Such disruption will result in the formation of customer relationships between Stryker and OsteoMed's existing customers, the adverse effects of which cannot be adequately compensated for in money damages.

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 46 of the Complaint.

47.     Thus, Stryker is liable to OsteoMed in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 47 of the Complaint.

48.     Stryker has been aware that it infringes the '608 Patent since at least September 2, 2020.

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 48 of the Complaint.

49.     Stryker's infringement of the '608 Patent is, has been, and continues to be, willful, intentional, deliberate, and/or in conscious disregard of OsteoMed's rights under the '608 Patent.

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 49 of the Complaint.

**COUNT II**
**(INFRINGEMENT OF THE '776 PATENT)**

50.     OsteoMed incorporates by reference and realleges each and every allegation of Paragraphs 1 through 49 as if set forth herein.

**AMENDED ANSWER:**

19

Stryker incorporates by reference its responses to the preceding allegations of paragraphs 1-49 as though stated herein.

51.     OsteoMed owns all substantial rights, interest, and title in and to the '776 Patent, including the sole and exclusive right to prosecute this action and enforce the '776 Patent against infringers, and to collect damages for all relevant times.

**AMENDED ANSWER:**

Stryker is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 51 of the Complaint, and, accordingly, denies the allegations set forth in paragraph 51 of the Complaint.

52.     The '776 Patent generally directed to "[a] system for securing bones together across a joint [that] includes a transfixation screw and a plate." Ex. B, '776 Patent at Abstract.

**AMENDED ANSWER:**

Stryker admits that Exhibit B attached to OsteoMed's Complaint purports to be a true and accurate copy of the '776 Patent and states that the '776 Patent is generally directed to "[a] system for securing bones together across a joint [that] includes a transfixation screw and a plate." Except as expressly admitted, Stryker denies all other allegations set forth in paragraph 52 of the Complaint.

53.     Stryker has made, had made, imported, supplied, distributed, sold, and/or offered for sale the Anchorage CP plating systems in this District and elsewhere in the United States.

**AMENDED ANSWER:**

Admitted.

54.     As set forth below, Stryker directly infringes at least claim 1 of the '776 Patent, either literally or under the doctrine of equivalents, by making, having made, importing, supplying, distributing, selling (directly or through intermediaries), and/or offering for sale, the Anchorage CP plating systems.

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 54 of the Complaint.

20

55.    For example, Stryker has infringed claim 1 of the '776 Patent, which recites as follows:

1.    A system for securing two discrete bones together across a joint between the two bones, comprising:

an elongate spine having:

a first end comprising:

at least one fixation point for attaching the first end to a first discrete bone on a first side of an intermediate joint; and

a first inner surface configured to substantially conform with a geometry of the first discrete bone;

a second end comprising:

at least one fixation point for attaching the second end to a second discrete bone on a second side of the joint; and

a second inner surface configured to substantially conform with a geometry of the second discrete bone; and

a bridge portion disposed between the first end and the second end, the bridge portion configured to span across the joint, at least a portion of said bridge portion having a depth greater than at least a portion of the depth of either the first end or the second end; and

a transfixation screw hole disposed along the spine, the transfixation screw hole comprising an inner surface configured to direct the transfixation screw through the transfixation screw hole such that the transfixation screw extends the bridge portion at a trajectory configured to pass through a first position on the first discrete bone, a portion of the joint, and a second position on the second discrete bone once the plate is placed across the joint; and

a transfixation screw comprising a head configured to abut the inner surface of the transfixation screw hole and a shaft configured to contiguously extend through the first discrete bone, through the joint, and into the second discrete bone so as to absorb tensile load when the second discrete bone is loaded relative to the first discrete bone thereby transferring the tensile load from the second discrete bone, through the screw into said head and said bridge portion.

**AMENDED ANSWER:**

21

Stryker denies the allegations set forth in paragraph 55 of the Complaint.

56.     The Anchorage CP plating system is "a system for securing two discrete bones together across a joint between the two bones" as required by claim 1 of the '776 Patent:



**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 56 of the Complaint.

57.     The Anchorage CP plating system has "an elongate spine" as required by claim 1 of the '776 Patent:



**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 57 of the Complaint.

58.     The Anchorage CP plating system has "a first end comprising: at least one fixation point for attaching the first end to a first discrete bone on a first side of an intermediate joint; and

22

a first inner surface configured to substantially conform with a geometry of the first discrete bone" as required by claim 1 of the '776 Patent:



1st end with fixation point

First inner surface configured to substantially conform with a geometry of the first bone

## AMENDED ANSWER:

Stryker denies the allegations set forth in paragraph 58 of the Complaint.

59. The Anchorage CP plating system has "a second end comprising: at least one fixation point for attaching the second end to a second discrete bone on a second side of the joint;



2nd end with fixation point

Second inner surface configured to substantially conform with a geometry of the second bone

23

and a second inner surface configured to substantially conform with a geometry of the second discrete bone" as required by claim 1 of the '776 Patent:

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 59 of the Complaint.

60.      The Anchorage CP plating system has "a bridge portion disposed between the first end and the second end, the bridge portion configured to span across the joint, at least a portion of said bridge portion having a depth greater than at least a portion of the depth of either the first end or the second end" as required by claim 1 of the '776 Patent:



**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 60 of the Complaint.

61.      The Anchorage CP plating system has "a transfixation screw hole disposed along the spine, the transfixation screw hole comprising an inner surface configured to direct the transfixation screw through the transfixation screw hole such that the transfixation screw extends the bridge portion at a trajectory configured to pass through a first position on the first discrete bone, a portion of the joint, and a second position on the second discrete bone once the plate is placed across the joint" as required by claim 1 of the '776 Patent:

24



**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 61 of the Complaint.

62.    The Anchorage CP plating system has "a transfixation screw comprising a head configured to abut the inner surface of the transfixation screw hole and a shaft configured to contiguously extend through the first discrete bone, through the joint, and into the second discrete bone so as to absorb tensile load when the second discrete bone is loaded relative to the first discrete bone thereby transferring the tensile load from the second discrete bone, through the screw into said head and said bridge portion" as required by claim 1 of the '776 Patent:



**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 62 of the Complaint.

63.     Stryker's infringement of the '776 Patent has caused, and will continue to cause, OsteoMed to suffer substantial and irreparable harm.

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 63 of the Complaint.

64.     Stryker's infringement of the '776 Patent will result in loss of market share for OsteoMed's ExtremiLOCK™ Foot Plating System.   Such losses cannot be adequately compensated for in money damages.

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 64 of the Complaint.

65.     Upon information and belief, Stryker's infringement of the '776 Patent will expose OsteoMed to loss of pricing discretion for OsteoMed's ExtremiLOCK™ Foot Plating System and price erosion whose magnitude and adverse effects cannot be adequately compensated for in money damages.

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 65 of the Complaint.

66.     Stryker's infringement of the '776 Patent has disrupted, and will disrupt, OsteoMed's customer relationships.   Such disruption will result in the formation of customer relationships between Stryker and OsteoMed's existing customers, the adverse effects of which cannot be adequately compensated for in money damages.

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 66 of the Complaint.

67.     Thus, Stryker is liable to OsteoMed in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 67 of the Complaint.

68.     Stryker has been aware that it infringes the '776 Patent since at least September 2, 2020.

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 68 of the Complaint.

69.     Stryker's infringement of the '776 Patent is, has been, and continues to be, willful, intentional, deliberate, and/or in conscious disregard of OsteoMed's rights under the '776 Patent.

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 69 of the Complaint.

**COUNT III**
**(INFRINGEMENT OF THE '716 PATENT)**

70.     OsteoMed incorporates by reference and realleges each and every allegation of Paragraphs 1 through 69 as if set forth herein.

**AMENDED ANSWER:**

Stryker incorporates by reference its responses to the preceding allegations of paragraphs

1-69 as though stated herein.

71.     OsteoMed owns all substantial rights, interest, and title in and to the '716 Patent, including the sole and exclusive right to prosecute this action and enforce the '716 Patent against infringers, and to collect damages for all relevant times.

**AMENDED ANSWER:**

Stryker is without knowledge or information sufficient to form a belief as to the truth of

the allegations set forth in paragraph 71 of the Complaint, and, accordingly, denies the allegations

set forth in paragraph 71 of the Complaint.

72.     The '716 Patent generally directed to "[a] system for securing bones together across a joint [that] includes a transfixation screw and a plate." Ex. C, '716 Patent at Abstract.

**AMENDED ANSWER:**

Stryker admits that Exhibit C attached to OsteoMed's Complaint purports to be a true and

accurate copy of the '716 Patent and states that the '716 Patent is generally directed to "[a] system

27

for securing bones together across a joint [that] includes a transfixation screw and a plate." Except as expressly admitted, Stryker denies all other allegations set forth in paragraph 72 of the Complaint.

73.     Stryker has made, had made, imported, supplied, distributed, sold, and/or offered for sale the Anchorage CP plating systems in this District and elsewhere in the United States.

**AMENDED ANSWER:**

Admitted.

74.     As set forth below, Stryker directly infringes at least claim 1 of the '716 Patent, either literally or under the doctrine of equivalents, by making, having made, importing, supplying, distributing, selling (directly or through intermediaries), and/or offering for sale, the Anchorage CP plating systems.

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 74 of the Complaint.

75.     For example, Stryker has infringed claim 1 of the '716 Patent, which recites as follows:

1. A system for securing two discrete bones together across a joint between the two bones, comprising:

an elongate spine having:

a first end comprising:

at least one fixation point for attaching the first end to a first discrete bone on a first side of an intermediate joint; and

a first inner surface configured to substantially conform with a geometry of the first discrete bone;

a second end comprising:

at least one fixation point for attaching the second end to a second discrete bone on a second side of the joint; and

a second inner surface configured to substantially conform with a geometry of the second discrete bone; and

28

a bridge portion disposed between the first end and the second end, at least a portion of said bridge portion having a depth greater than at least a portion of the depth of either the first end or the second end; and

a transfixation screw hole disposed along the spine, the transfixation screw hole comprising an inner surface configured to direct the transfixation screw through the transfixation screw hole such that the transfixation screw extends the bridge portion at a trajectory configured to pass through a first position on the first discrete bone, a portion of the joint, and a second position on the second discrete bone; and

a transfixation screw comprising a head configured to abut the inner surface of the transfixation screw hole and a shaft configured to contiguously extend through the first discrete bone, through the joint, and into the second discrete bone so as to absorb tensile load when the second discrete bone is loaded relative to the first discrete bone thereby transferring the tensile load from the second discrete bone, through the screw into said head and said bridge portion.

## AMENDED ANSWER:

Stryker denies the allegations set forth in paragraph 75 of the Complaint.

76.     The Anchorage CP plating system is "a system for securing two discrete bones together across a joint between the two bones" as required by claim 1 of the '716 Patent:



## AMENDED ANSWER:

Stryker denies the allegations set forth in paragraph 76 of the Complaint.

77.     The Anchorage CP plating system has "an elongate spine" as required by claim 1 of the '716 Patent:



**AMENDED**                                                                                 **ANSWER:**

Stryker denies the allegations set forth in paragraph 77 of the Complaint.

78.     The Anchorage CP plating system has "a first end comprising: at least one fixation point for attaching the first end to a first discrete bone on a first side of an intermediate joint; and a first inner surface configured to substantially conform with a geometry of the first discrete bone" as required by claim 1 of the '716 Patent:



**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 78 of the Complaint.

79.     The Anchorage CP plating system has "a second end comprising: at least one fixation point for attaching the second end to a second discrete bone on a second side of the joint; and a second inner surface configured to substantially conform with a geometry of the second discrete bone" as required by claim 1 of the '716 Patent:



2ⁿᵈ end with fixation point

Second inner surface configured to substantially conform with a geometry of the second bone

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 79 of the Complaint.

80.     The Anchorage CP plating system has "a bridge portion disposed between the first end and the second end, at least a portion of said bridge portion having a depth greater than at least a portion of the depth of either the first end or the second end" as required by claim 1 of the '716 Patent:



1ˢᵗ end

Bridge portion

2ⁿᵈ end

Greater depth

A greater depth than 1ˢᵗ and 2ⁿᵈ ends

31

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 80 of the Complaint.

81.     The Anchorage CP plating system has "a transfixation screw hole disposed along the spine, the transfixation screw hole comprising an inner surface configured to direct the transfixation screw through the transfixation screw hole such that the transfixation screw extends the bridge portion at a trajectory configured to pass through a first position on the first discrete bone, a portion of the joint, and a second position on the second discrete bone" as required by claim 1 of the '716 Patent:



**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 81 of the Complaint.

82.     The Anchorage CP plating system has "a transfixation screw comprising a head configured to abut the inner surface of the transfixation screw hole and a shaft configured to contiguously extend through the first discrete bone, through the joint, and into the second discrete bone so as to absorb tensile load when the second discrete bone is loaded relative to the first discrete bone thereby transferring the tensile load from the second discrete bone, through the screw into said head and said bridge portion" as required by claim 1 of the '716 Patent:



**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 82 of the Complaint.

83.      Stryker's infringement of the '716 Patent has caused, and will continue to cause, OsteoMed to suffer substantial and irreparable harm.

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 83 of the Complaint.

84.      Stryker's infringement of the '716 Patent will result in loss of market share for OsteoMed's ExtremiLOCK™ Foot Plating System.  Such losses cannot be adequately compensated for in money damages.

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 84 of the Complaint.

85.      Upon information and belief, Stryker's infringement of the '716 Patent will expose OsteoMed to loss of pricing discretion for OsteoMed's ExtremiLOCK™ Foot Plating System and price erosion whose magnitude and adverse effects cannot be adequately compensated for in money damages.

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 85 of the Complaint.

86. Stryker's infringement of the '716 Patent has disrupted, and will disrupt, OsteoMed's customer relationships. Such disruption will result in the formation of customer relationships between Stryker and OsteoMed's existing customers, the adverse effects of which cannot be adequately compensated for in money damages.

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 86 of the Complaint.

87. Thus, Stryker is liable to OsteoMed in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 87 of the Complaint.

88. Stryker has been aware that it infringes the '716 Patent since at least September 2, 2020.

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 88 of the Complaint.

89. Stryker's infringement of the '716 Patent is, has been, and continues to be, willful, intentional, deliberate, and/or in conscious disregard of OsteoMed's rights under the '716 Patent.

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 89 of the Complaint.

**COUNT IV**
**(INFRINGEMENT OF THE '085 PATENT)**

90. OsteoMed incorporates by reference and realleges each and every allegation of Paragraphs 1 through 89 as if set forth herein.

**AMENDED ANSWER:**

Stryker incorporates by reference its responses to the preceding allegations of paragraphs

1-89 as though stated herein.

91. OsteoMed owns all substantial rights, interest, and title in and to the '085 Patent, including the sole and exclusive right to prosecute this action and enforce the '085 Patent against infringers, and to collect damages for all relevant times.

34

**AMENDED ANSWER:**

Stryker is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 91 of the Complaint, and, accordingly, denies the allegations set forth in paragraph 91 of the Complaint.

92.     The '085 Patent generally directed to "[a] system for securing bones together across a joint [that] includes a transfixation screw and a plate."  Ex. D, '085 Patent at Abstract.

**AMENDED ANSWER:**

Stryker admits that Exhibit D attached to OsteoMed's Complaint purports to be a true and accurate copy of the '085 Patent and states that the '085 Patent is generally directed to "[a] system for securing bones together across a joint [that] includes a transfixation screw and a plate."  Except as expressly admitted, Stryker denies all other allegations set forth in paragraph 92 of the Complaint.

93.     Stryker has made, had made, imported, supplied, distributed, sold, and/or offered for sale the Anchorage CP plating systems in this District and elsewhere in the United States.

**AMENDED ANSWER:**

Admitted.

94.     As set forth below, Stryker directly infringes at least claim 1 of the '085 Patent, either literally or under the doctrine of equivalents, by making, having made, importing, supplying, distributing, selling (directly or through intermediaries), and/or offering for sale, the Anchorage CP plating systems.

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 94 of the Complaint.

95.     For Example, Stryker has infringed claim 1 of the '085 Patent, which recites as follows:

> 1. A system for securing a first discrete bone and a second discrete bone together across a joint between the first discrete bone and the second discrete bone, the system comprising:

35

a plate comprising:

> an elongate spine having a first end comprising at least one attachment point for attaching the first end to the first discrete bone on a first side of the joint, a second end comprising at least one attachment point for attaching the second end to the second discrete bone on a second side of the joint, and a bridge portion disposed between the first end and the second end, the bridge portion having a portion configured to span across the joint, the bridge portion further comprising a thickened portion having a thickness greater than at least a portion of a thickness of either the first end or the second end; and

> an aperture defining a transfixation screw hole disposed along the spine at the thickened portion of the bridge portion, the transfixation screw hole comprising an inner surface configured to direct a transfixation screw through the transfixation screw hole such that the transfixation screw extends at a trajectory configured to pass through a first position on the first discrete bone and a second position on the second discrete bone once the plate is placed across the joint.

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 95 of the Complaint.

96.     The Anchorage CP plating system is "a system for securing a first discrete bone and a second discrete bone together across a joint between the first discrete bone and the second discrete bone" as required by claim 1 of the '085 Patent:



**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 96 of the Complaint.

36

97. The Anchorage CP plating system has "a plate" as required by claim 1 of the '085 Patent:



**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 97 of the Complaint.

98.     The Anchorage CP plating system has "a plate [] comprising an elongate spine" as required by claim 1 of the '085 Patent:



**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 98 of the Complaint.

99.     The Anchorage CP plating system has "a plate comprising: an elongate spine having a first end comprising at least one attachment point for attaching the first end to the first discrete bone on a first side of the joint, a second end comprising at least one attachment point for attaching the second end to the second discrete bone on a second side of the joint, and a bridge portion disposed between the first end and the second end, the bridge portion having a portion configured to span across the joint, the bridge portion further comprising a thickened portion having a thickness greater than at least a portion of a thickness of either the first end or the second end" as required by claim 1 of the '085 Patent:



**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 99 of the Complaint.

38

100. The Anchorage CP plating system has "a plate comprising: [] an aperture defining a transfixation screw hole disposed along the spine at the thickened portion of the bridge portion, the transfixation screw hole comprising an inner surface configured to direct a transfixation screw through the transfixation screw hole such that the transfixation screw extends at a trajectory configured to pass through a first position on the first discrete bone and a second position on the second discrete bone once the plate is placed across the joint" as required by claim 1 of the '085 Patent:



**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 100 of the Complaint.

101. Stryker's infringement of the '085 Patent has caused, and will continue to cause, OsteoMed to suffer substantial and irreparable harm.

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 101 of the Complaint.

102. Stryker's infringement of the '085 Patent will result in loss of market share for OsteoMed's ExtremiLOCK™ Foot Plating System. Such losses cannot be adequately compensated for in money damages.

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 102 of the Complaint.

103. Upon information and belief, Stryker's infringement of the '085 Patent will expose OsteoMed to loss of pricing discretion for OsteoMed's ExtremiLOCK™ Foot Plating System and

price erosion whose magnitude and adverse effects cannot be adequately compensated for in money damages.

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 103 of the Complaint.

104. Stryker's infringement of the '085 Patent has disrupted, and will disrupt, OsteoMed's customer relationships. Such disruption will result in the formation of customer relationships between Stryker and OsteoMed's existing customers, the adverse effects of which cannot be adequately compensated for in money damages.

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 104 of the Complaint.

105. Thus, Stryker is liable to OsteoMed in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 105 of the Complaint.

106. Stryker has been aware that it infringes the '085 Patent since at least September 2, 2020.

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 106 of the Complaint.

107. Stryker's infringement of the '085 Patent is, has been, and continues to be, willful, intentional, deliberate, and/or in conscious disregard of OsteoMed's rights under the '085 Patent.

**AMENDED ANSWER:**

Stryker denies the allegations set forth in paragraph 107 of the Complaint.

### DEMAND FOR JURY TRIAL

108. Pursuant to Federal Rule of Civil Procedure 38, OsteoMed hereby demands a jury trial on all issues so triable.

**AMENDED ANSWER:**

The request for a jury trial set forth in the Complaint requires no response.

40

## RESPONSE TO PRAYER FOR RELIEF

To the extent that any response to OsteoMed's Prayer for Relief is appropriate, Stryker denies that OsteoMed is entitled to any relief whatsoever.

## STRYKER'S AFFIRMATIVE DEFENSES

Pursuant to the Federal Rules of Civil Procedure, Stryker asserts at this time the following Affirmative Defenses to OsteoMed's Complaint based upon Stryker's present knowledge, information, and belief, and without waiving any other affirmative defense that may arise or come to Stryker's attention in the future. Stryker's designation of its defenses as "affirmative" is not intended in any way to alter the burden of proof with regard to any element of OsteoMed's claim.

## STRYKER'S FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

## STRYKER'S SECOND AFFIRMATIVE DEFENSE

Stryker has not engaged and is not engaging in any act that constitutes direct infringement, either literally or under the doctrine of equivalents, of any valid and enforceable claim of any of the patents-in-suit.

## STRYKER'S THIRD AFFIRMATIVE DEFENSE

Stryker has not engaged and is not engaging in any act that constitutes willful infringement of any valid and enforceable claim of any of the patents-in-suit.

## STRYKER'S FOURTH AFFIRMATIVE DEFENSE

The claims of the patents-in-suit are invalid for failure to meet one or more of the conditions of patentability as specified in Title 35 of the United States Code, including 35 U.S.C. §§ 102, 103, and/or 112 *et seq*. No claim of any of the patents-in-suit can be validly construed to cover any product or action of Stryker.

## STRYKER'S FIFTH AFFIRMATIVE DEFENSE

OsteoMed's claims are barred in whole or in part by prosecution history estoppel.

## STRYKER'S SIXTH AFFIRMATIVE DEFENSE

OsteoMed's claims are barred or otherwise limited under principles of equity, including waiver, estoppel, unclean hands, and/or acquiescence, and render the patents-in-suit unenforceable.

## STRYKER'S SEVENTH AFFIRMATIVE DEFENSE

OsteoMed's right to seek damages is limited or barred, including without limitation by 35 U.S.C. §§ 286 and 287.

## STRYKER'S EIGHTH AFFIRMATIVE DEFENSE

OsteoMed may not seek injunctive relief against Stryker because the alleged damages are not immediate and irreparable.

## STRYKER'S NINTH AFFIRMATIVE DEFENSE

OsteoMed has suffered no damages.

## STRYKER'S TENTH AFFIRMATIVE DEFENSE

This is an exceptional case, and Stryker is entitled to an award of attorney's fees pursuant to 35 U.S.C. § 285.

## RESERVATION OF AFFIRMATIVE DEFENSES

Stryker reserves all other affirmative defenses that may now exist or in the future may become available based on discovery or other proceedings and further factual investigation, and specifically reserves the right to amend its pleadings to assert any such additional defenses or claims.

## **PRAYER FOR RELIEF**

WHEREFORE, Stryker respectfully prays for the following relief:

A. Dismissal of OsteoMed's Complaint with prejudice, in its entirety,

B. An injunction against OsteoMed from asserting that Stryker, or Stryker's officers, agents, representatives, and/or customers have infringed or are infringing any claim of the '608 patent;

C. An injunction against OsteoMed from asserting that Stryker, or Stryker's officers, agents, representatives, and/or customers have infringed or are infringing any claim of the '776 patent;

D. An injunction against OsteoMed from asserting that Stryker, or Stryker's officers, agents, representatives, and/or customers have infringed or are infringing any claim of the '716 patent;

E. An injunction against OsteoMed from asserting that Stryker, or Stryker's officers, agents, representatives, and/or customers have infringed or are infringing any claim of the '085 patent;

F. A judgment that this case is exceptional and an award to Stryker of its costs, expenses, and reasonable attorney's fees under 35 U.S.C. § 285 and all other applicable statutes and rules in common law that would be appropriate, with pre- and post-judgment interest thereon; and

G. That Stryker be awarded such other and further relief as this Court may deem just and appropriate under the circumstances.

43

Dated:  May 21, 2021

McANDREWS, HELD & MALLOY, LTD.

/s/ *Robert A. Surrette*

Robert A. Surrette (IL Bar No. 6243979)
Sharon A. Hwang (IL Bar No. 6217211)
Scott P. McBride (IL Bar No. 6256356)
Ashley M. Ratcyz (IL Bar No. 6330321)
500 W. Madison Street, Suite 3400
Chicago, IL 60661
(312) 775-8000
bsurrette@mcandrews-ip.com
shwang@mcandrews-ip.com

*Attorneys for Defendant Stryker Corporation*

44