**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| OSTEOMED LLC, )<br><br>Plaintiff, )<br><br>v. )<br><br>STRYKER CORPORATION and )<br>HOWMEDICA OSTEONICS CORP., )<br><br>Defendants. ) | Civil Action No. 1:20-cv-6821<br><br>**JURY TRIAL DEMANDED** |

| |
|---|
| STRYKER EUROPEAN OPERATIONS )<br>HOLDINGS LLC and HOWMEDICA )<br>OSTEONICS CORP., )<br>    )<br>Counterclaim Plaintiffs, )<br>    )<br>v. )<br>    )<br>OSTEOMED LLC, )<br>    )<br>Counterclaim Defendant. ) |

**STRYKER CORPORATION, HOWMEDICA OSTEONICS CORP., AND STRYKER
EUROPEAN OPERATIONS HOLDINGS LLC'S AMENDED COUNTERCLAIMS**

Pursuant to the Court's May 17, 2021 order and memorandum opinion (Dkt. 39, 40),

Defendant and Counterclaim-Plaintiff Stryker Corporation ("Stryker"), Defendant and

Counterclaim-Plaintiff Howmedica Osteonics Corp. ("Howmedica"), and Counterclaim-Plaintiff

Stryker European Operations Holdings LLC ("SEOH") hereby submit the following counterclaims

against Plaintiff OsteoMed LLC ("OsteoMed"). Counterclaims 1-4 herein are defensive

counterclaims brought on behalf of Defendants Stryker and Howmedica. Counterclaims 1-4 are

the same as the counterclaims set forth in Stryker's Answer to Complaint and Counterclaims

submitted on January 29, 2021. *See* Dkt. 20. Counterclaims 5-9 herein are offensive counterclaims brought on behalf of Counterclaim-Plaintiffs Howmedica and SEOH. As explained in Howmedica's and SEOH's unopposed motion for leave to amend submitted herewith, Counterclaims 5-6 have been amended from the original counterclaims set forth in Stryker's Answer to Complaint and Counterclaims (Dkt. 20) to provide clarifying edits and image annotations. Further, Counterclaims 8-9 herein are new. In particular, counterclaims 8-9 relate to Howmedica and SEOH's assertion of patent infringement by OsteoMed of U.S. Patent No. 10,933,751 which recently issued on May 4, 2021.

**PARTIES**

1. Stryker Corporation ("Stryker") is a Michigan corporation having its principal place of business at 2825 Airview Boulevard, Kalamazoo, Michigan 49002. Stryker Corporation is the ultimate parent corporation of Stryker European Operations Holdings LLC and Howmedica Osteonics Corp.

2. Stryker European Operations Holdings LLC ("SEOH") is a limited liability company organized and existing under the laws of Delaware with its principal place of business at 2825 Airview Boulevard, Kalamazoo, Michigan 49002. SEOH owns the patent rights asserted in Counterclaims 5-9. The Court granted SEOH's motion to intervene as Counterclaim-Plaintiff on May 17, 2021. *See* Dkt. 39, 40.

3. Howmedica Osteonics Corp. ("Howmedica") is a New Jersey corporation having its principal place of business at 325 Corporate Drive, Mahwah, New Jersey 07430. Howmedica is a wholly-owned subsidiary of Stryker Corporation, exclusive licensee of the patents asserted in Counterclaims 5-9, and exclusive distributor of the Accused Products. The Court granted

Howmedica's motion to intervene both as Defendant and Counterclaim-Plaintiff on May 17, 2021. *See* Dkt. 39, 40.

4. By its Complaint, OsteoMed is a Delaware limited liability company with its principal place of business at 3885 Arapaho Road, Addison, Texas 75001.

## JURISDICTION AND VENUE

5. These Counterclaims seek a declaratory judgment of non-infringement and patent invalidity, and a judgment of infringement against OsteoMed arising under the Patent Laws of the United States, Title 35 of the United States Code.

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

7. This Court has personal jurisdiction, general and specific, over OsteoMed because OsteoMed has sufficient minimum contacts to establish personal jurisdiction in this judicial District. Venue is proper in this judicial District under 28 U.S.C. §§ 1391(b), 1391(c), and/or 1400(b). By its Complaint, OsteoMed has consented to personal jurisdiction and venue in this judicial District as it relates to the Counterclaims.

## BACKGROUND

8. Stryker was founded in 1941 by Dr. Homer Stryker, an orthopaedic surgeon from Kalamazoo, Michigan. Dr. Stryker started the company to produce medical products that he invented to better meet his patients' needs. Today, Stryker is recognized as one of the world's leading medical technology companies. Stryker develops, designs, manufactures, and sells innovative medical technologies in a variety of areas, including orthopaedics.

9. Among its many orthopaedic products, Stryker, through its subsidiaries, manufactures and sells Anchorage CP Plating Systems, which are single use bone fixation

3

appliances intended for permanent implantation in the foot and ankle. Howmedica is the exclusive distributor of Anchorage CP Plating Systems in the United States. The Anchorage CP Plating Systems feature a Cross Plate (CP) hole that allows partially threaded CP screws to compress across a fusion site. The Anchorage CP Plating Systems, shown below, are protected by a family of patents owned by Stryker.



10.     Stryker, through its subsidiaries, also manufactures and sells ToeTac® Xpress Hammertoe Fixation Systems, which are intramedullary implants indicated for the fixation of osteotomies and reconstruction of the lesser toes following correction procedures for hammertoe, claw toe, and mallet toe. Howmedica is the exclusive distributor of ToeTac® Xpress Hammertoe Fixation Systems in the United States. The ToeTac® Xpress Hammertoe Fixation Systems, shown below, are protected by a family of patents owned by Stryker.



**SEOH PATENTS-IN-SUIT**

11.     On July 14, 2015, the United States Patent and Trademark Office ("the USPTO) duly and legally issued U.S. Patent No. 9,078,713 ("the '713 patent"), which is titled "Orthopedic Implant in the Form of a Plate to be Fixed Between Two Bone Parts."  The '713 patent has a priority date that is at least as early as October 2, 2008. SEOH is the owner by assignment of the '713 patent, and Howmedica holds an exclusive license to the '713 patent. The '713 patent is virtually marked on Stryker's Anchorage CP Plating System. A true and accurate copy of the '713 patent is attached hereto as Exhibit 1.

12.     On October 27, 2015, the United States Patent and Trademark Office ("the USPTO) duly and legally issued U.S. Patent No. 9,168,074 ("the '074 patent"), which is titled "Resorptive Intramedullary Implant Between Two Bones or Two Bone Fragments."  The '074 patent has a priority date that is at least as early as September 2, 2008. SEOH is the owner by assignment of the '074 patent, and Howmedica holds an exclusive license to the '074 patent. The '074 patent is virtually marked on Stryker's ToeTac® Express System. A true and accurate copy of the '074 patent is attached hereto as Exhibit 2.

13. On May 4, 2021, the United States Patent and Trademark Office ("the USPTO) duly and legally issued U.S. Patent No. 10,933,751 ("the '751 patent"), which is titled "Orthopedic Implant in the Form of a Plate to be Fixed Between Two Bone Parts." The '751 patent has a priority date that is at least as early as October 2, 2008. SEOH is the owner by assignment of the '751 patent, and Howmedica holds an exclusive license to the '751 patent. The '751 patent is virtually marked on Stryker's Anchorage CP Plating System. A true and accurate copy of the '751 patent is attached hereto as Exhibit 3.

**OSTEOMED'S INFRINGING PRODUCTS**

14. Counterclaim Defendant OsteoMed is a medical technology company that competes in the marketplace with Stryker. Upon information and belief, OsteoMed manufactures, uses, imports, offers for sale, sells, and/or distributes surgical implants used in foot and ankle surgery.

15. Upon information and belief, OsteoMed manufactures, uses, imports, offers for sale, sells, and/or distributes the ExtremiLOCK™ Foot Plating System for use in treating multiple reconstructive and trauma applications of the forefoot, midfoot, and hindfoot.

16. The ExtremiLOCK™ Foot Plating System can be used to treat a first metatarso-phalangeal joint by fusing the first metatarsal and proximal phalanx. The ExtremiLOCK™ Foot Plating System includes bone plates that are designed for use with transfixation screws that cross through the joint.



**1ˢᵗ MTP Arthrodesis - Transfixation Plate**

Patented transfixation hole* allows for compression at the joint preventing plantar gapping during normal gait motion. Pre-bent with 10° of dorsiflexion and valgus correction.

6

Exhibit 4, ExtremiLOCK<sup>TM</sup> Foot Plating System Brochure, p. 5.

17.     OsteoMed provides a surgical technique guide to instruct physicians how to plate a first metatarso-phalangeal arthrodesis using an ExtremiLOCK<sup>TM</sup> transfixation plate. Exhibit 5, ExtremiLOCK<sup>TM</sup> Foot Plating System Surgical Technique Guide, pp. 19-20.

18.     The ExtremiLOCK<sup>TM</sup> Foot Plating System can also be used to treat a first tarsometatarsal joint by fusing the first metatarsal with the medial cuneiform. The ExtremiLOCK<sup>TM</sup> Foot Plating System includes bone plates that are designed for use with transfixation screws that cross through the joint.



**Lapidus Plate**

The lapidus plate offers stable fixation with the use of either 2.7mm or 3.5/4.0mm screws. An added benefit is a built in compression screw hole to provide compression at the joint.

Exhibit 4, ExtremiLOCK<sup>TM</sup> Foot Plating System Brochure, p. 5.

19.     OsteoMed provides a surgical technique guide to instruct physicians how to plate a lapidus arthrodesis using an ExtremiLOCK<sup>TM</sup> lapidus plate. Exhibit 5, ExtremiLOCK<sup>TM</sup> Foot Plating System Surgical Technique Guide, pp. 23-24.

20.     Upon information and belief, OsteoMed also manufactures, uses, imports, offers for sale, sells, and/or distributes the FPS<sup>TM</sup> Foot Plating System for use in treating multiple reconstructive and trauma applications of the forefoot, midfoot, and hindfoot.

21.     The FPS<sup>TM</sup> Foot Plating System can be used to treat a first metatarso-phalangeal joint by fusing the first metatarsal and proximal phalanx. The FPS<sup>TM</sup> Foot Plating System includes bone plates that are designed for use with transfixation screws that cross through the joint.



Exhibit 6, FPS<sup>TM</sup> Foot Plating System Brochure, p. 3.

22.     OsteoMed provides a surgical technique guide to instruct physicians how to plate a first metatarso-phalangeal arthrodesis using an FPS<sup>TM</sup> transfixation plate. Exhibit 7, FPS<sup>TM</sup> Foot Plating System Surgical Technique Guide, pp. 24-29.

23.     The FPS<sup>TM</sup> Foot Plating System can also be used to treat a first tarsometatarsal joint by fusing the first metatarsal with the medial cuneiform. The FPS<sup>TM</sup> Foot Plating System includes bone plates that are designed for use with transfixation screws that cross through the joint.



Exhibit 6, FPS<sup>TM</sup> Foot Plating System Brochure, p. 3.

8

24. OsteoMed provides a surgical technique guide to instruct physicians how to plate a lapidus arthrodesis using an FPS™ Foot Plating System lapidus plate. Exhibit 7, FPS™ Foot Plating System Surgical Technique Guide, pp. 30-32.

25. Upon information and belief, OsteoMed also manufactures, uses, imports, offers for sale, sells, and/or distributes the ExtremiFuse™ Hammertoe Fixation System for use in proximal interphalangeal fusion procedures.

26. As shown below, OsteoMed's ExtremiFuse™ Hammertoe Fixation System includes intramedullary implants including a quad barb design on one end and a threaded design on the other end:



Exhibit 9, ExtremiFuse™ Brochure and Surgical Guide.

### FIRST COUNTERCLAIM
### (DECLARATION OF NON-INFRINGEMENT AND INVALIDITY OF THE '608 PATENT)

27. Stryker and Howmedica reallege and incorporate by reference the allegations set forth above in paragraphs 1-26 of its Counterclaims above, as if fully set forth herein.

28.     OsteoMed, by its Complaint, alleges that it owns all substantial rights, interest, and title in and to U.S. Patent No. 8,529,608 (hereinafter, "the '608 Patent").

29.     OsteoMed, by its Complaint, alleges that Stryker directly infringes at least claim 11 of the '608 Patent, either literally or under the doctrine of equivalents, by making, having made, importing, supplying, distributing, selling (directly or through intermediaries), and/or offering for sale, the Anchorage CP plating systems.

30.     Stryker and Howmedica have not infringed and are not infringing, either literally or under the doctrine of equivalents, the '608 patent, and the claims of the '608 patent are invalid. There is thus a real, immediate, substantial, and justiciable controversy between Stryker, Howmedica, and OsteoMed concerning whether the '608 Patent is valid and infringed that is amenable to specific relief through the conclusive decrees requested.

31.     Stryker and Howmedica have not engaged in and are not engaging in any act that constitutes direct infringement, either literally or under the doctrine of equivalents, of any valid and enforceable claim of the '608 patent. The Anchorage CP plating systems do not infringe, either literally or under the doctrine of equivalents, any valid and enforceable claim of the '608 patent under any section of 35 U.S.C. § 271.

32.     The Anchorage CP plating system does not directly infringe any claim of the '608 patent, including but not limited to asserted claim 11. For example, the Anchorage CP plating system does not include several elements of the claims of the '608 patent, including at least the claimed "bridge portion disposed between the first end and the second end, the bridge portion configured to span across the joint," "transfixation screw extends alongside the bridge portion," or "wherein at least a portion of said bridge portion and said transfixation screw hole has a thickness greater than at least a portion of said first and second ends."

10

33. The '608 patent is invalid for failure to meet one or more conditions of patentability as specified in the Patent Laws (Title 35 of the U.S. Code), including, but not limited to, 35 U.S.C. §§ 102, 103, and/or 112, *et seq.* No claim of the '608 patent can be validly construed to cover any product or action of Stryker or Howmedica.

34. The claims of the '608 patent are invalid under 35 U.S.C. §§ 102 and 103 in view of the prior art. For example, the claims of the '608 patent are anticipated and/or obvious in view of at least WO 2007/131287, U.S. 2005/0171544 A1, US2003/0040748 A1, and/or US 2005/0010226 A1, which disclose every element of the claims. To the extent that an element is missing from any one of these references, that element would have been obvious in view of other prior art or the knowledge of a person of ordinary skill in the art.

35. For example, U.S. 2005/0171544 A1 to Falkner ("Falkner"), titled "Bone Plate With Toothed Aperture," was published on August 4, 2005, and is prior art to the '608 patent. A true and correct copy of Falkner is attached as Exhibit 9 and is incorporated herein by reference. Figures 1 and 2 are depicted below.



36. Falkner discloses every element of claim 11 of the '608 patent. Falkner describes a bone plate with a toothed aperture for securing two bone parts together across a bone fracture. As shown in the figures and described in the specification, the Falkner bone plate comprises an elongate spine having a first end with at least one hole for attaching the first end to a first bone part and an inner surface configured to substantially conform with the geometry of the first bone part. The Falkner bone plate's elongate spine also has a second end with at least one hole for attaching the second end to a second bone part and an inner surface configured to substantially conform to the geometry of the second bone part. As shown in Figure 1, the Falkner bone plate has a bridge portion disposed between the first and second ends where the bridge portion is configured to span across the joint. Figures 1 and 2 demonstrate that the Falkner bone plate has an angled transfixation screw hole configured to direct a transfixation screw through the hole, and through the first and second bone parts. The specification recognizes that the thickness of the bone plate may vary, becoming thicker "to increase structural stability." Exhibit 9 at ¶35. To the extent that an element of the claims is missing from this reference, that element would have been obvious in view of other prior art and/or the knowledge of a person of ordinary skill in the art.

37. The claims of the '608 patent are also invalid for being indefinite, lacking written description support, and/or lacking enablement under 35 U.S.C. § 112. For example, claim 11 of the '608 patent recites a plate for securing two discrete bones together across an intermediate joint "wherein at least a portion of said bridge portion and said transfixation screw hole has a thickness greater than at least a portion of said first and second ends." Such language is indefinite, lacks written description support, and/or lacks enablement under 35 U.S.C. § 112.

38.     An actual, justiciable controversy exists between the parties by virtue of OsteoMed's Complaint and Stryker's and Howmedica's Counterclaims as to the invalidity and non-infringement of the '608 patent.

39.     The meritless allegations of patent infringement made by OsteoMed against Stryker are causing irreparable damage to Stryker and Howmedica.

40.     Stryker and Howmedica are entitled to judgment by this Court declaring all claims of the '608 patent invalid and/or not infringed by Stryker or Howmedica.

41.     Since the conduct of OsteoMed renders this case to be "exceptional" under 35 U.S.C. § 285, Stryker and Howmedica are entitled to recover its reasonable costs, expenses, and attorney fees.

## SECOND COUNTERCLAIM
### (DECLARATION OF NON-INFRINGEMENT AND INVALIDITY OF THE '776 PATENT)

42.     Stryker and Howmedica reallege and incorporate by reference the allegations set forth above in paragraphs 1-41 of its Counterclaims, as if fully set forth herein.

43.     OsteoMed, by its Complaint, alleges that it owns all substantial rights, interest, and title in and to U.S. Patent No. 9,351,776 (hereinafter, "the '776 Patent").

44.      OsteoMed, by its Complaint, alleges that Stryker directly infringes at least claim 1 of the '776 Patent, either literally or under the doctrine of equivalents, by making, having made, importing, supplying, distributing, selling (directly or through intermediaries), and/or offering for sale, the Anchorage CP plating systems.

45.     Stryker and Howmedica have not infringed and are not infringing, either literally or under the doctrine of equivalents, the '776 patent, and the claims of the '776 patent are invalid. There is thus a real, immediate, substantial, and justiciable controversy between Stryker,

13

Howmedica, and OsteoMed concerning whether the '776 Patent is valid and infringed that is amenable to specific relief through the conclusive decrees requested.

46.     Stryker and Howmedica are not engaging in any act that constitutes direct infringement, either literally or under the doctrine of equivalents, of any valid and enforceable claim of the '776 patent. The Anchorage CP plating systems do not infringe, either literally or under the doctrine of equivalents, any valid and enforceable claim of the '776 patent under any section of 35 U.S.C. § 271.

47.     The Anchorage CP plating system does not directly infringe any claim of the '776 patent, including but not limited to asserted claim 1. For example, the Anchorage CP plating system does not include several elements of the claims of the '776 patent, including at least the claimed "bridge portion disposed between the first end and the second end, the bridge portion configured to span across the joint," "at least a portion of said bridge portion having a depth greater than at least a portion of the depth of either the first end or the second end," and "transfixation screw extends the bridge portion at a trajectory."

48.     The '776 patent is invalid for failure to meet one or more conditions of patentability as specified in the Patent Laws (Title 35 of the U.S. Code), including, but not limited to, 35 U.S.C. §§ 102, 103, and/or 112, *et seq.* No claim of the '776 patent can be validly construed to cover any product or action of Stryker or Howmedica.

49.     The claims of the '776 patent are invalid under 35 U.S.C. §§ 102 and 103 in view of the prior art. For example, the claims of the '776 patent are anticipated and/or obvious in view of at least WO 2007/131287, U.S. 2005/0171544 A1, US2003/0040748 A1, and/or US 2005/0010226 A1, which disclose every element of the claims. To the extent that an element is

14

missing from any one of these references, that element would have been obvious in view of other prior art or the knowledge of a person of ordinary skill in the art.

50. For example, U.S. 2005/0171544 A1 to Falkner ("Falkner"), titled "Bone Plate With Toothed Aperture," was published on August 4, 2005, and is prior art to the '776 patent. Figures 1 and 2 are depicted above.

51. Falkner discloses every element of claim 1 of the '776 patent. Falkner describes a system for securing two bone parts together across a bone fracture. As shown in the figures and described in the specification, the Falkner bone plate comprises an elongate spine having a first end with at least one hole for attaching the first end to a first bone part and an inner surface configured to substantially conform with the geometry of the first bone part. The Falkner bone plate's elongate spine also has a second end with at least one hole for attaching the second end to a second bone part and an inner surface configured to substantially conform to the geometry of the second bone part. As shown in Figure 1, the Falkner bone plate has a bridge portion disposed between the first and second ends where the bridge portion is configured to span across the joint. Figures 1 and 2 demonstrate that the Falkner bone plate has an angled transfixation screw hole configured to direct a transfixation screw through the hole, and through the first and second bone parts. The specification recognizes that the thickness of the bone plate may vary, becoming thicker "to increase structural stability." Exhibit 9 at ¶35. To the extent that an element of the claims is missing from this reference, that element would have been obvious in view of other prior art and/or the knowledge of a person of ordinary skill in the art.

52. The claims of the '776 patent are also invalid for being indefinite, lacking written description support, and/or lacking enablement under 35 U.S.C. § 112. For example, claim 1 of the '776 patent recites "at least a portion of said bridge portion having a depth greater than at least

15

a portion of the depth of either the first end or the second end," and a "transfixation screw extends the bridge portion." Such claim limitations are indefinite, lack written description support, and/or are not enabled.

53. An actual, justiciable controversy exists between the parties by virtue of OsteoMed's Complaint and Stryker's and Howmedica's Counterclaims as to the invalidity and non-infringement of the '776 patent.

54. The meritless allegations of patent infringement made by OsteoMed against Stryker are causing irreparable damage to Stryker and Howmedica.

55. Stryker and Howmedica are entitled to judgment by this Court declaring all claims of the '776 patent invalid and/or not infringed by Stryker or Howmedica.

56. Since the conduct of OsteoMed renders this case to be "exceptional" under 35 U.S.C. § 285, Stryker and Howmedica are entitled to recover its reasonable costs, expenses, and attorney fees.

## THIRD COUNTERCLAIM
### (DECLARATION OF NON-INFRINGEMENT AND INVALIDITY OF THE '716 PATENT)

57. Stryker and Howmedica reallege and incorporate by reference the allegations set forth above in paragraphs 1-56 of its Counterclaims, as if fully set forth herein.

58. OsteoMed, by its Complaint, alleges that it owns all substantial rights, interest, and title in and to U.S. Patent No. 9,763,716 (hereinafter, "the '716 Patent").

59. OsteoMed, by its Complaint, alleges that Stryker directly infringes at least claim 1 of the '716 Patent, either literally or under the doctrine of equivalents, by making, having made, importing, supplying, distributing, selling (directly or through intermediaries), and/or offering for sale, the Anchorage CP plating systems.

16

60.     Stryker and Howmedica have not infringed and are not infringing, either literally or under the doctrine of equivalents, the '716 patent, and the claims of the '716 patent are invalid. There is thus a real, immediate, substantial, and justiciable controversy between Stryker, Howmedica, and OsteoMed concerning whether the '716 Patent is valid and infringed that is amenable to specific relief through the conclusive decrees requested.

61.     Stryker and Howmedica are not engaging in any act that constitutes direct infringement, either literally or under the doctrine of equivalents, of any valid and enforceable claim of the '716 patent. The Anchorage CP plating systems do not infringe, either literally or under the doctrine of equivalents, any valid and enforceable claim of the '716 patent under any section of 35 U.S.C. § 271.

62.     The Anchorage CP plating system does not directly infringe any claim of the '716 patent, including but not limited to asserted claim 1. For example, the Anchorage CP plating system does not include several elements of the claims of the '716 patent, including at least the claimed "bridge portion disposed between the first end and the second end, at least a portion of said bridge portion having a depth greater than at least a portion of the depth of either the first end or the second end," and "transfixation screw extends the bridge portion at a trajectory."

63.     The '716 patent is invalid for failure to meet one or more conditions of patentability as specified in the Patent Laws (Title 35 of the U.S. Code), including, but not limited to, 35 U.S.C. §§ 102, 103, and/or 112, *et seq.* No claim of the '716 patent can be validly construed to cover any product or action of Stryker or Howmedica.

64.     The claims of the '716 patent are invalid under 35 U.S.C. §§ 102 and 103 in view of the prior art. For example, the claims of the '716 patent are anticipated and/or obvious in view of at least WO 2007/131287, U.S. 2005/0171544 A1, US2003/0040748 A1, and/or US

17

2005/0010226 A1, which disclose every element of the claims. To the extent that an element is missing from any one of these references, that element would have been obvious in view of other prior art or the knowledge of a person of ordinary skill in the art.

65. For example, U.S. 2005/0171544 A1 to Falkner ("Falkner"), titled "Bone Plate With Toothed Aperture," was published on August 4, 2005, and is prior art to the '716 patent. Figures 1 and 2 are depicted above.

66. Falkner discloses every element of claim 1 of the '716 patent. Falkner describes a system for securing two bone parts together across a bone fracture. As shown in the figures and described in the specification, the Falkner bone plate comprises an elongate spine having a first end with at least one hole for attaching the first end to a first bone part and an inner surface configured to substantially conform with the geometry of the first bone part. The Falkner bone plate's elongate spine also has a second end with at least one hole for attaching the second end to a second bone part and an inner surface configured to substantially conform to the geometry of the second bone part. As shown in Figure 1, the Falkner bone plate has a bridge portion disposed between the first and second ends where the bridge portion is configured to span across the joint. Figures 1 and 2 demonstrate that the Falkner bone plate has an angled transfixation screw hole configured to direct a transfixation screw through the hole, and through the first and second bone parts. The specification recognizes that the thickness of the bone plate may vary, becoming thicker "to increase structural stability." Exhibit 9 at ¶35. To the extent that an element of the claims is missing from this reference, that element would have been obvious in view of other prior art and/or the knowledge of a person of ordinary skill in the art.

67. The claims of the '716 patent are also invalid for being indefinite, lacking written description support, and/or lacking enablement under 35 U.S.C. § 112. For example, claim 1 of

the '716 patent recites "at least a portion of said bridge portion having a depth greater than at least a portion of the depth of either the first end or the second end" and a "transfixation screw extends the bridge portion." Such claim limitations are indefinite, lack written description support, and/or are not enabled.

68.     An actual, justiciable controversy exists between the parties by virtue of OsteoMed's Complaint and Stryker's and Howmedica's Counterclaims as to the invalidity and non-infringement of the '716 patent.

69.     The meritless allegations of patent infringement made by OsteoMed against Stryker are causing irreparable damage to Stryker and Howmedica.

70.     Stryker and Howmedica are entitled to judgment by this Court declaring all claims of the '716 patent invalid and/or not infringed by Stryker or Howmedica.

71.     Since the conduct of OsteoMed renders this case to be "exceptional" under 35 U.S.C. § 285, Stryker and Howmedica are entitled to recover its reasonable costs, expenses, and attorney fees.

## FOURTH COUNTERCLAIM
### (DECLARATION OF NON-INFRINGEMENT AND INVALIDITY OF THE '085 PATENT)

72.     Stryker and Howmedica reallege and incorporate by reference the allegations set forth above in paragraphs 1-71 of its Counterclaims, as if fully set forth herein.

73.     OsteoMed, by its Complaint, alleges that it owns all substantial rights, interest, and title in and to U.S. Patent No. 10,245,085 (hereinafter, "the '085 Patent").

74.     OsteoMed, by its Complaint, alleges that Stryker directly infringes at least claim 1 of the '085 Patent, either literally or under the doctrine of equivalents, by making, having made,

19

importing, supplying, distributing, selling (directly or through intermediaries), and/or offering for sale, the Anchorage CP plating systems.

75.     Stryker and Howmedica have not infringed and are not infringing, either literally or under the doctrine of equivalents, the '085 patent, and the claims of the '085 patent are invalid. There is thus a real, immediate, substantial, and justiciable controversy between Stryker, Howmedica, and OsteoMed concerning whether the '085 Patent is valid and infringed that is amenable to specific relief through the conclusive decrees requested.

76.     Stryker and Howmedica are not engaging in any act that constitutes direct infringement, either literally or under the doctrine of equivalents, of any valid and enforceable claim of the '085 patent. The Anchorage CP plating systems do not infringe, either literally or under the doctrine of equivalents, any valid and enforceable claim of the '085 patent under any section of 35 U.S.C. § 271.

77.     The Anchorage CP plating system does not directly infringe any claim of the '085 patent, including but not limited to asserted claim 1. For example, the Anchorage CP plating system does not include several elements of the claims of the '085 patent, including at least the claimed "bridge portion having a portion configured to span across the joint, the bridge portion further comprising a thickened portion having a thickness greater than at least a portion of the thickness of either the first end or the second end," and "an aperture defining a transfixation screw hole disposed along the spine at the thickened portion of the bridge portion."

78.     The '085 patent is invalid for failure to meet one or more conditions of patentability as specified in the Patent Laws (Title 35 of the U.S. Code), including, but not limited to, 35 U.S.C. §§ 102, 103, and/or 112, *et seq.* No claim of the '085 patent can be validly construed to cover any product or action of Stryker or Howmedica.

20

79. The claims of the '085 patent are invalid under 35 U.S.C. §§ 102 and 103 in view of the prior art. For example, the claims of the '085 patent are anticipated and/or obvious in view of at least WO 2007/131287, U.S. 2005/0171544 A1, US2003/0040748 A1, and/or US 2005/0010226 A1, which disclose every element of the claims. To the extent that an element is missing from any one of these references, that element would have been obvious in view of other prior art or the knowledge of a person of ordinary skill in the art.

80. For example, U.S. 2005/0171544 A1 to Falkner ("Falkner"), titled "Bone Plate With Toothed Aperture," was published on August 4, 2005, and is prior art to the '085 patent. Figures 1 and 2 are depicted above.

81. Falkner discloses every element of claim 1 of the '085 patent. Falkner describes a system for securing two bone parts together across a bone fracture. As shown in the figures and described in the specification, the Falkner bone plate comprises an elongate spine having a first end with at least one hole for attaching the first end to a first bone part and a second end with at least one hole for attaching the second end to a second bone part. As shown in Figure 1, the Falkner bone plate has a bridge portion disposed between the first and second ends where the bridge portion is configured to span across the joint. Figures 1 and 2 demonstrate that the Falkner bone plate has an angled transfixation screw hole configured to direct a transfixation screw through the hole, and through the first and second bone parts. The specification recognizes that the thickness of the bone plate may vary, becoming thicker "to increase structural stability." Exhibit 9 at ¶35. To the extent that an element of the claims is missing from this reference, that element would have been obvious in view of other prior art and/or the knowledge of a person of ordinary skill in the art.

82. The claims of the '085 patent are also invalid for being indefinite, lacking written description support, and/or lacking enablement under 35 U.S.C. § 112. For example, claim 1 of

the '085 patent recites "an aperture defining a transfixation screw hole disposed along the spine at the thickened portion of the bridge portion." Such claim limitation is indefinite, lacks written description support, and is not enabled.

83. An actual, justiciable controversy exists between the parties by virtue of OsteoMed's Complaint and Stryker's and Howmedica's Counterclaims as to the invalidity and non-infringement of the '085 patent.

84. The meritless allegations of patent infringement made by OsteoMed against Stryker are causing irreparable damage to Stryker and Howmedica.

85. Stryker and Howmedica are entitled to judgment by this Court declaring all claims of the '085 patent invalid and/or not infringed by Stryker and Howmedica.

86. Since the conduct of OsteoMed renders this case to be "exceptional" under 35 U.S.C. § 285, Stryker and Howmedica are entitled to recover its reasonable costs, expenses, and attorney fees.

### <u>FIFTH COUNTERCLAIM</u>
### (INFRINGEMENT OF U.S. PATENT NO. 9,078,713 BY THE EXTREMILOCK™ FOOT PLATING SYSTEM)

87. Howmedica and SEOH reallege and incorporate by reference the allegations set forth above in paragraphs 1-86 of its Counterclaims, as well as the allegations in Counterclaims 6-9 below, as if fully set forth herein.

88. The '713 Patent is assigned to SEOH and exclusively licensed to Howmedica.

89. The '713 Patent is directed to a bone plate fixed between two bone parts by way of screws engaged in holes formed in the thickness of the plate to improve compression between the bone parts. The plate has a formation that orients at least one screw at an angle with respect to the plate to ensure compression of the two bone parts.

90. OsteoMed actively, knowingly, and intentionally has been and continues to induce infringement of the '713 patent under 35 U.S.C. § 271(b) and/or has been and continues to contribute to infringement of the '713 patent under 35 U.S.C. § 271(c) by manufacturing, selling, and offering for sale the ExtremiLOCK™ Foot Plating System.

91. OsteoMed has directed and directs third parties, including customers in the United States, to use the accused ExtremiLOCK™ Foot Plating System in a manner that OsteoMed knows practices the claimed inventions. For example, as described above, OsteoMed's brochures and surgical guides describe how to use the accused ExtremiLOCK™ Foot Plating System.

92. On information and belief, in violation of 35 U.S.C. § 271(b), OsteoMed specifically intends to induce infringement of the '713 patent by its customers and users of the ExtremiLOCK™ Foot Plating System and has knowledge that the inducing acts would cause infringement or is willfully blind to the possibility that their inducing acts would cause infringement.

93. At least as early as OsteoMed's receipt of this Counterclaim, OsteoMed has been and is actively inducing infringement of the '713 patent by actively and knowingly inducing third parties such as customers to commit acts that OsteoMed knows constitute infringement of at least exemplary claim 32 of the '713 patent.

94. OsteoMed's customers directly infringe at least exemplary claim 32 of the '713 patent by using OsteoMed's ExtremiLOCK™ Foot Plating System.

95. OsteoMed markets and promotes its ExtremiLOCK™ Foot Plating System to customers for use in performing surgical procedures of the foot. OsteoMed also provides a Surgical Technique Guide with the ExtremiLOCK™ Foot Plating System that describes how to use the

accused system in a manner that infringes at least exemplary claim 32 of the '713 patent. Exhibit

5, ExtremiLOCK™ Foot Plating System Surgical Guide at 19-20, 24.

96.    Claim 32 of the '713 patent recites as follows:

A method of fusing a joint, the method comprising:

spanning first and second bones separated by a joint with a bone plate, such that a first hole of the bone plate is aligned with a first bone of the joint and a second hole of the bone plate is aligned with a second bone of the joint;

inserting a first fixation member through the first hole of the plate and into the first bone of the joint;

inserting a second fixation member through the second hole of the plate and into the second bone of the joint; and

inserting a third fixation member through a third hole in the plate, into the first bone, across the joint, and into the second bone so that a free end of the third fixation member, not attached to any portion of the plate, resides in the second bone and a head of the third fixation member is seated in the third hole, the third hole being angled relative to a longitudinal axis of the plate through a thickness of the plate, wherein the third fixation member is the only fixation member extending across the joint.

97.    The ExtremiLOCK™ Foot Plating System is intended for use in "a method for

fusing a joint" as required by claim 32 of the '713 patent. For example, the ExtremiLOCK™ Foot

Plating System brochure describes and depicts the use of the transfixation plate for fusing a

metatarso-phalangeal joint and the use of the lapidus plate for fusing a tarsometatarsal joint.

Exhibit 4, ExtremiLOCK™ Foot Plating System Brochure, p. 5.



**1st MTP Arthrodesis - Transfixation Plate**

Patented transfixation hole* allows for compression at the joint preventing plantar gapping during normal gait motion. Pre-bent with 10° of dorsiflexion and valgus correction.

24



**Lapidus Plate**

The lapidus plate offers stable fixation with the use of either 2.7mm or 3.5/4.0mm screws. An added benefit is a built in compression screw hole to provide compression at the joint.

98.     The method of fusing joints using the ExtremiLOCK™ Foot Plating System includes the step of "spanning first and second bones separated by a joint with a bone plate, such that a first hole of the bone plate is aligned with a first bone of the joint and a second hole of the bone plate is aligned with a second bone of the joint," as required by claim 32 of the '713 patent. The ExtremiLOCK™ Foot Plating System Surgical Guide describes a Transfixation Plate Technique for plating the 1st MTP arthrodesis:

## Plating 1st MTP Arthrodesis (Cont.)

### Transfixation Plate Technique

Transfixation plate technology allows for a screw to cross through the joint and into the plantar aspect of the opposing bone in the joint resisting plantar gapping through normal gait. The plate and transfixation screw combination results in a stronger biomechanical structure for fusion. The transfixation 1st MTP plate has 10° of dorsiflexion and 10° of valgus correction and can accept locking and non-locking screws. The transfixation screw hole can accept a Double-Lead non-locking screw or a 3.0mm cannulated lag screw.

Exhibit 5, ExtremiLOCK™ Foot Plating System Surgical Guide at 19-20. The ExtremiLOCK™ Foot Plating System Surgical Guide describes two different plate positioning and compression methods for use with the Transfixation Plate Technique: (1) plate positioning and compression using the compression hole; and (2) plate positioning and compression using the transfixation hole. *Id.* Both of the described methods include the step of "spanning first and second bones separated by a joint with a bone plate, such that a first hole of the bone plate is aligned with a first bone of the joint and a second hole of the bone plate is aligned with a second bone of the joint," as required by claim 32 of the '713 patent:



Exhibit 5, ExtremiLOCK™ Foot Plating System Surgical Guide at 19; *see also id.* at 20.

99.     The method of fusing joints using the ExtremiLOCK™ Foot Plating System includes the step of "inserting a first fixation member through the first hole of the plate and into the first bone of the joint," as required by claim 32 of the '713 patent. For example, when following the procedure described in the ExtremiLOCK™ Foot Plating System Surgical Guide for plate positioning and compression using the compression hole, it states "[i]nsert a screw in the compression hole following the compression hole technique." Exhibit 5, ExtremiLOCK™ Foot Plating System Surgical Guide at 19. The compression hole is the claimed "first hole," the screw is the claimed "first fixation member," and the first fixation member is inserted through the first hole of the plate and into the first bone of the joint as shown below:



Exhibit 5, ExtremiLOCK™ Foot Plating System Surgical Guide at 19. The compression hole is the claimed "first hole," the screw is the claimed "first fixation member," and the first fixation member is inserted through the first hole of the plate and into the first bone of the joint. Likewise, when following the procedure described in the ExtremiLOCK™ Foot Plating System Surgical Guide for plate positioning and compression via the transfixation hole, it states "[f]ixate remaining proximal screws on the metatarsal. A screw may be inserted into the compression hole in the neutral position for addition fixation." Exhibit 5, ExtremiLOCK™ Foot Plating System Surgical Guide at 20. With this technique, the "first hole" may be the compression hole or any of the other proximal holes. The proximal screw is the claimed "first fixation member" and the first fixation member is inserted through the first hole of the plate and into the first bone of the joint.

100. The method of fusing joints using the ExtremiLOCK™ Foot Plating System includes the step of "inserting a second fixation member through the second hole of the plate and into the second bone of the joint," as required by claim 32 of the '713 patent. For example, when following the procedure described in the ExtremiLOCK™ Foot Plating System Surgical Guide for plate positioning and compression using the compression hole, it states "[f]ixate the distal screws on the phalanx using the screw preparation and insertion technique." The distal screw is the

claimed "second fixation member" that is inserted through the claimed "second hole" and into the claimed "second bone of the joint" as shown below:



Exhibit 5, ExtremiLOCK™ Foot Plating System Surgical Guide at 20. Likewise, when following the procedure described in the ExtremiLOCK™ Foot Plating System Surgical Guide for plate positioning and compression via the transfixation hole, it states "[f]ixate the distal screws on the phalanx using the screw preparation and insertion technique." Exhibit 5, ExtremiLOCK™ Foot Plating System Surgical Guide at 20. The distal screw is the claimed "second fixation member" which is inserted through the claimed "second hole" and into the claimed "second bone of the joint" as shown below:

28



Exhibit 5, ExtremiLOCK™ Foot Plating System Surgical Guide at 20.

101. The method of fusing joints using the ExtremiLOCK™ Foot Plating System includes the step of "inserting a third fixation member through a third hole in the plate, into the first bone, across the joint, and into the second bone so that a free end of the third fixation member, not attached to any portion of the plate, resides in the second bone and a head of the third fixation member is seated in the third hole, the third hole being angled relative to a longitudinal axis of the plate through a thickness of the plate, wherein the third fixation member is the only fixation member extending across the joint," as required by claim 32 of the '713 patent. For example, when following the procedure described in the ExtremiLOCK™ Foot Plating System Surgical Guide for plate positioning and compression using the compression hole, it states "[i]nsert a 2.7mm Double-Lead Non-Locking screw into the Transfixation hole. The screw should purchase as much of the plantar phalanx in order to prevent plantar distraction through normal gait." Exhibit 5, ExtremiLOCK™ Foot Plating System Surgical Guide at 19. The 2.7mm Double-Lead Non-Locking screw is the claimed "third fixation member," that is inserted through the transfixation hole, the claimed "third hole," such that it goes "into the first bone, across the joint, and into the second bone so that a free end of the third fixation member, not attached to any portion of the

29

plate, resides in the second bone and a head of the third fixation member is seated in the third hole, the third hole being angled relative to a longitudinal axis of the plate through a thickness of the plate, wherein the third fixation member is the only fixation member extending across the joint," as required by claim 32 of the '713 patent and as shown below:

Exhibit 5, ExtremiLOCK™ Foot Plating System Surgical Guide at 19. Likewise, when following the procedure described in the ExtremiLOCK™ Foot Plating System Surgical Guide for plate positioning and compression via the transfixation hole, it states "[i]nsert a 3.0mm cannulated lag screw into the transfixation hole following the cannulated lag screw technique." Exhibit 5, ExtremiLOCK™ Foot Plating System Surgical Guide at 20. The 3.0mm cannulated lag screw is the claimed "third fixation member," that is inserted through the transfixation hole, the claimed "third hole," such that it goes "into the first bone, across the joint, and into the second bone so that a free end of the third fixation member, not attached to any portion of the plate, resides in the second bone and a head of the third fixation member is seated in the third hole, the third hole being angled relative to a longitudinal axis of the plate through a thickness of the plate, wherein the third fixation member is the only fixation member extending across the joint," as required by claim 32 of the '713 patent and as shown below:



Exhibit 5, ExtremiLOCK™ Foot Plating System Surgical Technique Guide, p. 20.

102.     By continuing to provide instructions to users on how to use the accused ExtremiLOCK™ Foot Plating System in the manner described in the claims of the '713 patent, OsteoMed has and continues to specifically intend to induce infringement of the '713 patent.

103.     On information and belief, despite OsteoMed's knowledge of the '713 patent and knowledge that customers will necessarily infringe the '713 patent when the accused ExtremiLOCK™ Foot Plating System is used as instructed, OsteoMed continues to encourage infringement.

104.     OsteoMed also has and continues to intentionally commit contributory infringement by offering to sell and/or selling within the United States the ExtremiLOCK™ Foot Plating System, which is especially made or especially adapted for use in infringing the '713 patent. The ExtremiLOCK™ Foot Plating System is not a staple article of commerce suitable for substantial non-infringing use. By continuing to provide these products, OsteoMed has and continues to specifically intend to contributorily infringe the '713 patent.

105.     OsteoMed has committed and continues to commit all of the above acts of infringement without license or authorization.

106.     The requirements of 35 U.S.C. §287 have been met with respect to the '713 patent.

31

107. As a result of OsteoMed's infringement of the '713 patent, Howmedica and SEOH have suffered damages and will continue to suffer damages Howmedica and SEOH are entitled to recover damages adequate to compensate for OsteoMed's infringement.

108. The injury to Howmedica and SEOH is irreparable and will continue unless and until OsteoMed is enjoined from further infringement. OsteoMed's wrongful conduct has caused and will continue to cause Howmedica and SEOH to suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using, selling, offering to sell, and/or importing Howmedica and SEOH's patented inventions. On information and belief, OsteoMed and others will continue to infringe the '713 patent unless permanently enjoined by the Court. Unless a permanent injunction is issued enjoining OsteoMed and its agents, servants, employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the '713 patent, Howmedica and SEOH will be greatly and irreparably harmed.

**SIXTH COUNTERCLAIM**
**(INFRINGEMENT OF U.S. PATENT NO. 9,078,713**
**BY THE FPS™ FOOT PLATING SYSTEM)**

109. Howmedica and SEOH reallege and incorporate by reference the allegations set forth above in paragraphs 1-108 of its Counterclaims, as well as the allegations in Counterclaims 7-9 below, as if fully set forth herein.

110. OsteoMed actively, knowingly, and intentionally has been and continues to induce infringement of the '713 patent under 35 U.S.C. § 271(b) and/or has been and continues to contribute to infringement of the '713 patent under 35 U.S.C. § 271(c) by manufacturing, selling, and offering for its FPS™ Foot Plating System.

111. OsteoMed has directed and directs third parties, including customers in the United States, to use the accused FPS™ Foot Plating System in a manner that OsteoMed knows practices

the claimed inventions. For example, as described above, OsteoMed's brochures and surgical guides describe how to use the accused FPS™ Foot Plating System.

112. On information and belief, in violation of 35 U.S.C. § 271(b), OsteoMed specifically intends to induce infringement of the '713 patent by its customers and users of the FPS™ Foot Plating System and has knowledge that the inducing acts would cause infringement or is willfully blind to the possibility that their inducing acts would cause infringement.

113. At least as early as OsteoMed's receipt of this Counterclaim, OsteoMed has been and is actively inducing infringement of the '713 patent by actively and knowingly inducing third parties such as customers to commit acts that OsteoMed knows constitute infringement of at least exemplary claim 32 of the '713 patent.

114. OsteoMed's customers directly infringe at least exemplary claim 32 of the '713 patent by using OsteoMed's FPS™ Foot Plating System.

115. OsteoMed markets and promotes its FPS™ Foot Plating System to customers for use in performing surgical procedures of the foot. OsteoMed also provides a Surgical Technique Guide with the FPS™ Foot Plating System that describes how to use the accused system in a manner that infringes at least exemplary claim 32 of the '713 patent. Exhibit 7, FPS™ Foot Plating System Surgical Technique Guide, pp. at 24-32.

116. The FPS™ Foot Plating System is intended for use in "a method for fusing a joint" as required by claim 32 of the '713 patent. In particular, the FPS™ Foot Plating System brochure describes and depicts the use of the transfixation plate for fusing a metatarso-phalangeal joint and the use of the lapidus plate for fusing a metatarsal cuneiform joint. Exhibit 6, FPS™ Foot Plating System Brochure, p. 3.





117.    The method of fusing joints using the FPS™ Foot Plating System includes the step of "spanning first and second bones separated by a joint with a bone plate, such that a first hole of the bone plate is aligned with a first bone of the joint and a second hole of the bone plate is aligned with a second bone of the joint," as required by claim 32 of the '713 patent. The FPS™ Foot Plating System Surgical Guide describes OsteoMed's Transfixation Technology for use with the 1st MTP/MPJ fusion and Lapidus plates as follows:

### Transfixation Technology

Transfixation screws are available for use with the 1st MTP/MPJ fusion and Lapidus plates. Current common practice in arthrodesis cases is to plate these joints and/or use two crossed screws across the joints. These techniques keep the bones on either side of the joint in close proximity, but do not completely eliminate plantar distraction. If used, the plate is typically placed on the dorsal side of the foot due to physiological constraints. However, flexibility in the plate and relevant bones allows recurring minor distraction at the plantar aspect of the joint with each dorsiflexion of the foot. Crossed screws are typically positioned through the neutral axis, or middle, of the joint, which keeps the bones in apposition but does not resist plantar distraction. Conversely, the transfixation screw in the OsteoMed Foot Plating System runs from the dorsal side of the foot, through the joint, and into the plantar aspect of the opposing bone in the joint. This screw acts as a tension band and directly resists plantar distraction. Thus, the plate/transfixation screw combination results in a stronger biomechanical structure for fusion.

34

Exhibit 7, FPS™ Foot Plating System Surgical Technique Guide at 24. In particular, the FPS™ Foot Plating System Surgical Technique Guide describes the use of a 1st MTP/MPJ joint fusion plate with a transfixation hole:



4. Temporarily fixate the plate to the bones with K-wires or Holding Taks-.

Exhibit 7, FPS™ Foot Plating System Surgical Technique Guide at 25. The described method for using a 1st MTP/MPJ joint fusion plate with a transfixation hole includes the step of "spanning first and second bones separated by a joint with a bone plate, such that a first hole of the bone plate is aligned with a first bone of the joint and a second hole of the bone plate is aligned with a second bone of the joint," as required by claim 32 of the '713 patent:



Exhibit 7, FPS<sup>TM</sup> Foot Plating System Surgical Technique Guide at p. 24. The FPS<sup>TM</sup> Foot Plating

System Surgical Technique Guide also describes the use of a Lapidus plate with a transfixation

hole:



Exhibit 7, FPS<sup>TM</sup> Foot Plating System Surgical Technique Guide at p. 30. The described method

for using a Lapidus plate with a transfixation hole includes the step of "spanning first and second

bones separated by a joint with a bone plate, such that a first hole of the bone plate is aligned with

a first bone of the joint and a second hole of the bone plate is aligned with a second bone of the joint," as required by claim 32 of the '713 patent:



Exhibit 7, FPS™ Foot Plating System Surgical Technique Guide at p. 30.

118.    The method of fusing joints using the FPS™ Foot Plating System includes the step of "inserting a first fixation member through the first hole of the plate and into the first bone of the joint," as required by claim 32 of the '713 patent. For example, when following the procedure described in the FPS™ Foot Plating System Surgical Technique Guide for the 1st MTP/MPJ joint fusion plate with transfixation hole, it states "[p]ilot drill the remaining metatarsal screw holes and insert appropriately sized 2.7mm screws." Exhibit 7, FPS™ Foot Plating System Surgical Technique Guide at p. 28. The metatarsal screw hole is the claimed "first hole," the 2.7mm screw is the claimed "first fixation member," and the first fixation member is inserted through the first hole of the plate and into the first bone of the joint as shown below:

37



**13.** Pilot drill the remaining metatarsal screw holes and insert appropriately sized 2.7mm screws.

Exhibit 7, FPS™ Foot Plating System Surgical Technique Guide, p. 28. Likewise, when following

the procedure described in the FPS™ Foot Plating System Surgical Technique Guide for use of

the lapidus plate, it includes the following steps:

**11.** Select the 2.7mm screws compression drill guide and insert it into the compression hole over the first cuneiform.

**12.** Using the 2.0mm pilot drill for the 2.7mm screws, drill the pilot hole, check the length with the depth gauge, and insert the appropriately sized 2.7mm screw using the driver.

*Note: Use irrigation when pilot drilling.*

**13.** Repeat steps 6-9 in the remaining holes over the first cuneiform.

Exhibit 7, FPS™ Foot Plating System Surgical Technique Guide, p. 31. One of the remaining

holes described in step 13 is the claimed "first hole," the 2.7mm screw is the claimed "first fixation

member," and the first fixation member is inserted through the first hole of the bone plate and into

the first bone of the joint.

119.     The method of fusing joints using the FPS™ Foot Plating System includes the step

of "inserting a second fixation member through the second hole of the plate and into the second

bone of the joint," as required by claim 32 of the '713 patent. For example, when following the

procedure described in the FPS™ Foot Plating System Surgical Technique Guide for use of the 1st

MTP/MPJ joint fusion plate with transfixation hole, it describes the following steps:

6. Drill a pilot hole in the phalanx at the desired angle using the appropriate drill size, within plus or minus 10° from perpendicular to the plate.

*WARNING: When placing additional screws, ensure that subsequent screw placement does not interfere with the other screws.*

*Note: While the screw heads are designed to sit flush with the plate, screw head prominence will vary at severe angles. Screw head prominence may cause soft tissue irritation.*

*Note: Use irrigation when pilot drilling.*

7. Insert the depth gauge until it passes through the distal cortex. Retract the stem until the lip catches against the bone to determine measurement.

8. Select a 2.7mm screw of desired length for use in the phalanx. Verify the screw length with the gauge on the block. Insert the screw into the drilled hole to fixate the plate onto the bone. Fluoroscopy is recommended to ensure correct length and angulation.

**Tip:** To engage the head of the screw onto the self-retaining screwdriver shaft, insert the driver straight into the screw head with force. To remove the driver tip from the screw, rock slightly from side to side and lift.

9. Repeat steps 5-8 in the remaining holes over the phalanx.

Exhibit 7, FPS™ Foot Plating System Surgical Technique Guide, p. 26. The 2.7mm screw is the

claimed "second fixation member" that is inserted through the claimed "second hole" (one of the

phalanx holes) and into the claimed "second bone of the joint" as shown below:



Exhibit 7, FPS™ Foot Plating System Surgical Technique Guide, p. 25. Likewise, when following the procedure described in the FPS™ Foot Plating System Surgical Technique Guide for use of the lapidus plate, it describes the following steps:

6. Select the appropriate drill guide for the 2.7mm screws and insert it into one of the plate holes on the metatarsal. Standard and angled drill guides are available.

7. Use the 2.0mm pilot drill to drill a pilot hole in the metatarsal at the desired angle, within plus or minus 10˚ from perpendicular to the plate.

   *Note: While the screw heads are designed to sit flush with the plate, screw head prominence will vary at severe angles. Screw head prominence may cause soft tissue irritation.*

   *Note: Use irrigation when pilot drilling.*

8. Insert the depth gauge until it passes through the distal cortex. Retract the stem until the lip catches against the bone to determine measurement.

9. Select a 2.7mm screw of appropriate length. Verify the screw length with the gauge on the block. Insert the screw into the drilled hole to fixate the plate onto the bone. Fluoroscopy is recommended to ensure correct length and angulation.

**Tip:** To engage the head of the screw onto the self-retaining screwdriver shaft, insert the driver straight into the screw head with force. To remove the driver tip from the screw, rock slightly from side to side and lift.

   *WARNING: When placing additional screws, ensure that subsequent screw placement does not interfere with the other screws.*



10. Repeat steps 6-9 in the remaining hole over the metatarsal.

Exhibit 7, FPS™ Foot Plating System Surgical Technique Guide, pp. 30-31. The 2.7mm screw is the claimed "second fixation member" which is inserted through the claimed "second hole" (one of the metatarsal holes) and into the claimed "second bone of the joint" as shown below:

40



Exhibit 7, FPS^TM Foot Plating System Surgical Technique Guide, p. 31.

120.    The method of fusing joints using the FPS^TM Foot Plating System includes the step of "inserting a third fixation member through a third hole in the plate, into the first bone, across the joint, and into the second bone so that a free end of the third fixation member, not attached to any portion of the plate, resides in the second bone and a head of the third fixation member is seated in the third hole, the third hole being angled relative to a longitudinal axis of the plate through a thickness of the plate, wherein the third fixation member is the only fixation member extending across the joint," as required by claim 32 of the '713 patent. For example, when following the procedure described in the FPS^TM Foot Plating System Surgical Technique Guide for use of the 1st MTP/MPJ joint fusion plate with transfixation hole, it describes the following steps:

> **15.** Select the appropriate drill guide and pilot drill through the transfixation screw hole.
>
> *Note:   Use irrigation when pilot drilling.*
>
> *Optional: Overdrill the proximal cortex with a clearance drill to create a lag effect.*
>
> *Optional: A 3.0mm cannulated lag screw may be used in the transfixation hole. Please refer to the general instructions for implantation of cannulated screws.*

16. Insert the depth gauge until it passes through the distal cortex of the phalanx. Retract the stem until the lip catches against the bone to determine measurement.

17. Select the 2.7mm standard screw of desired length for use in the transfixation hole. Verify the screw length with the gauge on the block. Insert the screw into the drilled hole. Fluoroscopy is recommended to ensure correct length and angulation.



Exhibit 7, FPS™ Foot Plating System Surgical Technique Guide, pp. 28-29. The 2.7mm standard screw described in step 17 is the claimed "third fixation member," that is inserted through the transfixation hole, the claimed "third hole," such that it goes "into the first bone, across the joint, and into the second bone so that a free end of the third fixation member, not attached to any portion of the plate, resides in the second bone and a head of the third fixation member is seated in the third hole, the third hole being angled relative to a longitudinal axis of the plate through a thickness of the plate, wherein the third fixation member is the only fixation member extending across the joint," as required by claim 32 of the '713 patent and as shown below:



Exhibit 7, FPS$^{TM}$ Foot Plating System Surgical Technique Guide, p. 29.



Exhibit 6, FPS$^{TM}$ Foot Plating System Brochure, p. 4. Likewise, when following the procedure described in the FPS$^{TM}$ Foot Plating System Surgical Technique Guide for use of the lapidus plate, it describes the following steps:

43

11. Select the 2.7mm screws compression drill guide and insert it into the compression hole over the first cuneiform.

12. Using the 2.0mm pilot drill for the 2.7mm screws, drill the pilot hole, check the length with the depth gauge, and insert the appropriately sized 2.7mm screw using the driver.

*Note: Use irrigation when pilot drilling.*

13. Repeat steps 6-9 in the remaining holes over the first cuneiform.

Exhibit 7, FPS™ Foot Plating System Surgical Technique Guide, p. 31. The described "compression hole" in step 11 is the claimed "third hole" and the 2.7mm screw described in step 12 is the claimed "third fixation member," that is inserted through the compression hole such that it goes "into the first bone, across the joint, and into the second bone so that a free end of the third fixation member, not attached to any portion of the plate, resides in the second bone and a head of the third fixation member is seated in the third hole, the third hole being angled relative to a longitudinal axis of the plate through a thickness of the plate, wherein the third fixation member is the only fixation member extending across the joint," as required by claim 32 of the '713 patent and as shown below:

 

Exhibit 6, FPS™ Foot Plating System Brochure, p. 4.

121. By continuing to provide instructions to users on how to use the accused FPS<sup>TM</sup> Foot Plating System in the manner described in the claims of the '713 patent, OsteoMed has and continues to specifically intend to induce infringement of the '713 patent.

122. On information and belief, despite OsteoMed's knowledge of the '713 patent and knowledge that customers will necessarily infringe the '713 patent when the accused FPS<sup>TM</sup> Foot Plating System is used as instructed, OsteoMed continues to encourage infringement.

123. OsteoMed also has and continues to intentionally commit contributory infringement by offering to sell and/or selling within the United States the FPS<sup>TM</sup> Foot Plating System, which is especially made or especially adapted for use in infringing the '713 patent. The FPS<sup>TM</sup> Foot Plating System is not a staple article of commerce suitable for substantial non-infringing use. By continuing to provide these products, OsteoMed has and continues to specifically intend to contributorily infringe the '713 patent.

124. OsteoMed has committed and continues to commit all of the above acts of infringement without license or authorization.

125. The requirements of 35 U.S.C. §287 have been met with respect to the '713 patent.

126. As a result of OsteoMed's infringement of the '713 patent, Howmedica and SEOH have suffered damages and will continue to suffer damages. Howmedica and SEOH are entitled to recover damages adequate to compensate for OsteoMed's infringement.

127. The injury to Howmedica and SEOH is irreparable and will continue unless and until OsteoMed is enjoined from further infringement. OsteoMed's wrongful conduct has caused and will continue to cause Howmedica and SEOH to suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using, selling, offering to sell, and/or

45

importing Howmedica and SEOH's patented inventions. On information and belief, OsteoMed and others will continue to infringe the '713 patent unless permanently enjoined by the Court. Unless a permanent injunction is issued enjoining OsteoMed and its agents, servants, employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the '713 patent, Howmedica and SEOH will be greatly and irreparably harmed.

**SEVENTH COUNTERCLAIM**
**(INFRINGEMENT OF U.S. PATENT NO. 9,168,074)**

128. Howmedica and SEOH reallege and incorporate by reference the allegations set forth above in paragraphs 1-127 of its Counterclaims, as well as the allegations in Counterclaims 8-9 below, as if fully set forth herein.

129. The '074 Patent is assigned to SEOH and exclusively licensed to Howmedica.

130. The '074 Patent is directed to an intramedullary implant for use between two bones or two bone fragments. The implant includes a single-piece body having a generally elongate shape with a threaded zone at one end for anchoring a first bone part and a toothed zone on the second end for anchoring a second bone part.

131. OsteoMed has directly infringed, and continues to directly infringe, literally or under the doctrine of equivalents, at least claim 1 of the '074 patent by making, using, offering for sale, selling, and/or importing into the United States the accused ExtremiFuse™ Hammertoe Fixation System, in violation of 35 U.S.C. § 271.

132. The accused ExtremiFuse™ Hammertoe Fixation System includes every element of at least claim 1 of the '074 patent, literally or under the doctrine of equivalents. Claim 1 of the '074 patent recites as follows:

> An intramedullary implant for use between first and second bone parts, the implant comprising:

46

a first threaded end for anchoring to the first bone part;

a second end extending from the first end for anchoring to the second bone part, the second end having a longitudinal axis, a body portion, and a plurality of teeth projecting from the body portion,

wherein at least a first tooth of the plurality of teeth is spaced from a second tooth of the plurality of teeth in a direction along the longitudinal axis of the second end, the first and second teeth extending from the body portion in a same direction, and at least the first tooth extending from the body portion in a different direction than a direction a third tooth of the plurality of teeth extends from the body portion.

133. The ExtremiFuse<sup>TM</sup> Hammertoe Fixation System includes "an intramedullary implant for use between first and second bone parts" as required by claim 1 of the '074 patent.



134. The ExtremiFuse<sup>TM</sup> Hammertoe Fixation System includes "a first threaded end for anchoring to the first bone part" as required by claim 1 of the '074 patent.

47



135. The ExtremiFuse™ Hammertoe Fixation System includes "a second end extending from the first end for anchoring to the second bone part, the second end having a longitudinal axis, a body portion, and a plurality of teeth projecting from the body portion" as required by claim 1 of the '074 patent.



136.    The ExtremiFuse<sup>TM</sup> Hammertoe Fixation System includes "at least a first tooth of the plurality of teeth is spaced from a second tooth of the plurality of teeth in a direction along the longitudinal axis of the second end, the first and second teeth extending from the body portion in a same direction, and at least the first tooth extending from the body portion in a different direction than a direction a third tooth of the plurality of teeth extends from the body portion" as required by claim 1 of the '074 patent.

49





137. OsteoMed has committed and continues to commit all of the above acts of infringement without license or authorization.

138. The requirements of 35 U.S.C. §287 have been met with respect to the '074 patent.

139. As a result of OsteoMed's infringement of the '074 patent, Howmedica and SEOH have suffered damages and will continue to suffer damages. Howmedica and SEOH are entitled to recover damages adequate to compensate for OsteoMed's infringement.

140. The injury to Howmedica and SEOH is irreparable and will continue unless and until OsteoMed is enjoined from further infringement. OsteoMed's wrongful conduct has caused and will continue to cause Howmedica and SEOH to suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using, selling, offering to sell, and/or

importing Howmedica and SEOH's patented inventions. On information and belief, OsteoMed and others will continue to infringe the '074 patent unless permanently enjoined by the Court. Unless a permanent injunction is issued enjoining OsteoMed and its agents, servants, employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the '074 patent, Howmedica and SEOH will be greatly and irreparably harmed.

**EIGHTH COUNTERCLAIM**
**(INFRINGEMENT OF U.S. PATENT NO. 10,993,751**
**BY THE EXTREMILOCK™ FOOT PLATING SYSTEM)**

141. Howmedica and SEOH reallege and incorporate by reference the allegations set forth above in paragraphs 1-140 of its Counterclaims, as well as the allegations in Counterclaim 9 below, as if fully set forth herein.

142. The '751 Patent is assigned to SEOH and exclusively licensed to Howmedica.

143. The '751 Patent relates to a bone plate that is fixed between two bone parts by way of screws engaged in holes formed in the thickness of the plate. The bone plate includes an angled member which is inclined in relation to the plane defined by the plate and has a hole for engaging a screw that brings the two bone parts into a compressive position.

144. OsteoMed has directly infringed, and continues to directly infringe, literally or under the doctrine of equivalents, at least exemplary claim 17 of the '751 patent by making, using, offering for sale, selling, and/or importing into the United States the accused ExtremiLOCK™ Foot Plating System, in violation of 35 U.S.C. § 271.

145. The accused ExtremiLOCK™ Foot Plating System includes every element of at least claim 17 of the '751 patent, literally or under the doctrine of equivalents. Claim 17 of the '751 patent recites as follows:

An orthopedic implant comprising:

51

a bone plate having a proximal surface and an opposite distal bone contacting surface, said bone plate having a length sufficient to span a fracture or joint of a patient such that said bone plate is positionable alongside first and second bone parts straddling the fracture or joint,

said bone plate having a first hole configured to align with the first bone part, the first hole sized to accept a first bone screw,

a second hole configured to align with the second bone part, the second hole sized to accept a second bone screw,

a third hole located between said first hole and said second hole, said third hole sized to accept a third bone screw having a screw head, said third hole being angled relative to said bone plate such that, during use, said third bone screw is positioned to extend through said third hole and cross the fracture or joint, said third hole being configured to allow the entire screw head to be seated below the proximal surface of said bone plate,

and a pin hole located adjacent either said first hole or said second hole, said pin hole being smaller in area than said first hole or said second hole, said pin hole extending from said proximal surface of said bone plate to said distal surface, said pin hole being configured to accept a temporary fixation member.

146. The ExtremiLOCK™ Foot Plating System includes Transfixation Plates, Lapidus Plates, and a variety of screws. *See* Exhibit 4, ExtremiLOCK™ Foot Plating System Brochure, p. 3-5. The ExtremiLOCK™ Transfixation Plate is a "a bone plate having a proximal surface and an opposite distal bone contacting surface, said bone plate having a length sufficient to span a fracture or joint of a patient such that said bone plate is positionable alongside first and second bone parts straddling the fracture or joint" as required by claim 17 of the '751 patent:

52





Exhibit 5, ExtremiLOCK[TM] Foot Plating System Surgical Technique Guide, p. 19; *see also id.* at

p. 20. Likewise, the ExtremiLOCK[TM] Lapidus Plate is a "a bone plate having a proximal surface

and an opposite distal bone contacting surface, said bone plate having a length sufficient to span

53

a fracture or joint of a patient such that said bone plate is positionable alongside first and second bone parts straddling the fracture or joint" as required by claim 17 of the '751 patent:





Exhibit 5, ExtremiLOCK™ Foot Plating System Surgical Technique Guide, p. 24.

54

147. The ExtremiLOCK<sup>TM</sup> Transfixation Plate is a "bone plate having a first hole configured to align with the first bone part, the first hole sized to accept a first bone screw" as required by claim 17 of the '751 patent:



Exhibit 5, ExtremiLOCK<sup>TM</sup> Foot Plating System Surgical Technique Guide, p. 19; *see also id.* at p. 20. Likewise, the ExtremiLOCK<sup>TM</sup> Lapidus Plate is a "bone plate having a first hole configured to align with the first bone part, the first hole sized to accept a first bone screw" as required by claim 17 of the '751 patent:



Exhibit 5, ExtremiLOCK$^{TM}$ Foot Plating System Surgical Technique Guide, p. 24.

148.    The ExtremiLOCK$^{TM}$ Transfixation Plate further includes "a second hole configured to align with the second bone part, the second hole sized to accept a second bone screw" as required by claim 17 of the '751 patent:



Exhibit 5, ExtremiLOCK™ Foot Plating System Surgical Technique Guide, p. 19; *see also id.* at p. 20. Likewise, the ExtremiLOCK™ Lapidus Plate further includes "a second hole configured to align with the second bone part, the second hole sized to accept a second bone screw" as required by claim 17 of the '751 patent:



Exhibit 5, ExtremiLOCK™ Foot Plating System Surgical Technique Guide, p. 24.

149.    The ExtremiLOCK™ Transfixation Plate includes "a third hole located between said first hole and said second hole, said third hole sized to accept a third bone screw having a screw head, said third hole being angled relative to said bone plate such that, during use, said third bone screw is positioned to extend through said third hole and cross the fracture or joint, said third hole being configured to allow the entire screw head to be seated below the proximal surface of said bone plate" as required by claim 17 of the '751 patent:





Exhibit 5, ExtremiLOCK<sup>TM</sup> Foot Plating System Surgical Technique Guide, p. 19; *see also id.* at

p. 20. Likewise, the ExtremiLOCK<sup>TM</sup> Lapidus Plate includes "a third hole located between said

first hole and said second hole, said third hole sized to accept a third bone screw having a screw

head, said third hole being angled relative to said bone plate such that, during use, said third bone

screw is positioned to extend through said third hole and cross the fracture or joint, said third hole

being configured to allow the entire screw head to be seated below the proximal surface of said

bone plate" as required by claim 17 of the '751 patent:





Exhibit 5, ExtremiLOCK<sup>TM</sup> Foot Plating System Surgical Technique Guide, p. 24.

150. The ExtremiLOCK<sup>TM</sup> Transfixation Plate includes "a pin hole located adjacent

either said first hole or said second hole, said pin hole being smaller in area than said first hole or

said second hole, said pin hole extending from said proximal surface of said bone plate to said

distal surface, said pin hole being configured to accept a temporary fixation member" as required

by claim 17 of the '751 patent:





Exhibit 5, ExtremiLOCK^TM Foot Plating System Surgical Technique Guide, p. 19; *see also id.* at

p. 20. Likewise, the ExtremiLOCK^TM Lapidus Plate includes "a pin hole located adjacent either

said first hole or said second hole, said pin hole being smaller in area than said first hole or said

second hole, said pin hole extending from said proximal surface of said bone plate to said distal

surface, said pin hole being configured to accept a temporary fixation member" as required by claim 17 of the '751 patent:



Exhibit 5, ExtremiLOCK™ Foot Plating System Surgical Technique Guide, p. 24.

**Plate Selection and Positioning**

Select the appropriate size plate and place it either dorsal or dorsalmedial over the joint. (Plate Options: 2.7mm 0mm H Plate, 2.7mm 2-4mm Step Plate, 2.7mm or 3.5mm Lapidus Plate, 3.5mm H Plate). If using the lapidus style plate with compression hole, ensure the compression hole is proximal to the joint. Temporarily fixate the plate using plate TAKs.

Exhibit 5, ExtremiLOCK™ Foot Plating System Surgical Technique Guide, p. 23.

151. OsteoMed has committed and continues to commit all of the above acts of infringement without license or authorization.

152. The requirements of 35 U.S.C. §287 have been met with respect to the '751 patent.

153. As a result of OsteoMed's infringement of the '751 patent, Howmedica and SEOH have suffered damages and will continue to suffer damages. Howmedica and SEOH are entitled to recover damages adequate to compensate for OsteoMed's infringement.

154. The injury to Howmedica and SEOH is irreparable and will continue unless and until OsteoMed is enjoined from further infringement. OsteoMed's wrongful conduct has caused and will continue to cause Howmedica and SEOH to suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using, selling, offering to sell, and/or importing Howmedica and SEOH's patented inventions. On information and belief, OsteoMed and others will continue to infringe the '751 patent unless permanently enjoined by the Court. Unless a permanent injunction is issued enjoining OsteoMed and its agents, servants, employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the '751 patent, Howmedica and SEOH will be greatly and irreparably harmed.

**NINTH COUNTERCLAIM**
**(INFRINGEMENT OF U.S. PATENT NO. 10,993,751**
**BY THE FPS<sup>TM</sup> FOOT PLATING SYSTEM)**

155. Howmedica and SEOH reallege and incorporate by reference the allegations set forth above in paragraphs 1-154 of its Counterclaims as if fully set forth herein.

156. The '751 Patent is assigned to SEOH and exclusively licensed to Howmedica.

157. The '751 Patent relates to a bone plate that is fixed between two bone parts by way of screws engaged in holes formed in the thickness of the plate. The bone plate includes an angled member which is inclined in relation to the plane defined by the plate and has a hole for engaging a screw that brings the two bone parts into a compressive position.

158. OsteoMed has directly infringed, and continues to directly infringe, literally or under the doctrine of equivalents, at least exemplary claim 17 of the '751 patent by making, using, offering for sale, selling, and/or importing into the United States the accused FPS<sup>TM</sup> Foot Plating System, in violation of 35 U.S.C. § 271.

159. The accused FPS™ Foot Plating System includes every element of at least exemplary claim 17 of the '751 patent, literally or under the doctrine of equivalents. Claim 17 of the '751 patent recites as follows:

> An orthopedic implant comprising:
>
> a bone plate having a proximal surface and an opposite distal bone contacting surface, said bone plate having a length sufficient to span a fracture or joint of a patient such that said bone plate is positionable alongside first and second bone parts straddling the fracture or joint,
>
> said bone plate having a first hole configured to align with the first bone part, the first hole sized to accept a first bone screw,
>
> a second hole configured to align with the second bone part, the second hole sized to accept a second bone screw,
>
> a third hole located between said first hole and said second hole, said third hole sized to accept a third bone screw having a screw head, said third hole being angled relative to said bone plate such that, during use, said third bone screw is positioned to extend through said third hole and cross the fracture or joint, said third hole being configured to allow the entire screw head to be seated below the proximal surface of said bone plate,
>
> and a pin hole located adjacent either said first hole or said second hole, said pin hole being smaller in area than said first hole or said second hole, said pin hole extending from said proximal surface of said bone plate to said distal surface, said pin hole being configured to accept a temporary fixation member.

160. The FPS™ Foot Plating System includes 1st MTP Fusion Plates, Lapidus Plates, and a variety of screws. See Exhibit 6, FPS™ Foot Plating System Brochure at p. 3-5. The FPS™ 1st MTP Fusion Plate is a "a bone plate having a proximal surface and an opposite distal bone contacting surface, said bone plate having a length sufficient to span a fracture or joint of a patient such that said bone plate is positionable alongside first and second bone parts straddling the fracture or joint" as required by claim 17 of the '751 patent:





Exhibit 7, FPS™ Foot Plating System Surgical Technique Guide at p. 25. Likewise, the FPS™

Lapidus Plate is "a bone plate having a proximal surface and an opposite distal bone contacting

surface, said bone plate having a length sufficient to span a fracture or joint of a patient such that

said bone plate is positionable alongside first and second bone parts straddling the fracture or joint"

as required by claim 17 of the '751 patent:





Exhibit 7, FPS™ Foot Plating System Surgical Technique Guide at p. 30.

161.    The FPS™ 1st MTP Fusion Plate is a "bone plate having a first hole configured to align with the first bone part, the first hole sized to accept a first bone screw" as required by claim 17 of the '751 patent:



Exhibit 7, FPS™ Foot Plating System Surgical Technique Guide at p. 29. Likewise, the FPS™ Lapidus Plate is a "bone plate having a first hole configured to align with the first bone part, the first hole sized to accept a first bone screw" as required by claim 17 of the '751 patent:



Exhibit 7, FPS™ Foot Plating System Surgical Technique Guide at p. 30.

66

162. The FPS™ 1st MTP Fusion Plate further includes "a second hole configured to align with the second bone part, the second hole sized to accept a second bone screw" as required by claim 1 of the '751 patent:



Exhibit 7, FPS™ Foot Plating System Surgical Technique Guide at p. 29. Likewise, the FPS™ Lapidus Plate further includes "a second hole configured to align with the second bone part, the second hole sized to accept a second bone screw" as required by claim 17 of the '751 patent:



Exhibit 7, FPS^TM Foot Plating System Surgical Technique Guide at p. 30.

163.    The FPS^TM 1st MTP Fusion Plate includes "a third hole located between said first hole and said second hole, said third hole sized to accept a third bone screw having a screw head, said third hole being angled relative to said bone plate such that, during use, said third bone screw is positioned to extend through said third hole and cross the fracture or joint, said third hole being configured to allow the entire screw head to be seated below the proximal surface of said bone plate" as required by claim 17 of the '751 patent:





 

Exhibit 7, FPS^TM Foot Plating System Surgical Technique Guide at p. 29; Exhibit 6, FPS^TM Foot Plating System Brochure at p. 4. Likewise, the FPS^TM Lapidus Plate includes "a third hole located between said first hole and said second hole, said third hole sized to accept a third bone screw having a screw head, said third hole being angled relative to said bone plate such that, during use, said third bone screw is positioned to extend through said third hole and cross the fracture or joint, said third hole being configured to allow the entire screw head to be seated below the proximal surface of said bone plate" as required by claim 17 of the '751 patent:

70





 

Exhibit 7, FPS^TM Foot Plating System Surgical Technique Guide at p. 30; Exhibit 6, FPS^TM Foot Plating System Brochure at p. 4.

164. The FPS^TM 1st MTP Fusion Plate includes "a pin hole located adjacent either said first hole or said second hole, said pin hole being smaller in area than said first hole or said second hole, said pin hole extending from said proximal surface of said bone plate to said distal surface, said pin hole being configured to accept a temporary fixation member" as required by claim 17 of the '751 patent:

**Holding Taks™**
The OsteoMed **FPS™** Holding Taks- can be inserted into the plate holes with a wire/ pin driver to temporarily fixate the plate. Long K-wire ends can be burdensome to bend or work around. Holding Taks- can be cut at the end of the head after insertion to provide more visibility and space in the surgical site. The Holding Taks- can be removed by rotating and pulling on the knurled head either by hand or with an appropriate instrument.

Exhibit 7, FPS^TM Foot Plating System Surgical Technique Guide at p. 19.

72



Exhibit 7, FPS^{TM} Foot Plating System Surgical Technique Guide at p. 25.



Exhibit 7, FPS^{TM} Foot Plating System Surgical Technique Guide at p. 29. Likewise, the FPS^{TM}

Lapidus Plate includes "a pin hole located adjacent either said first hole or said second hole, said

pin hole being smaller in area than said first hole or said second hole, said pin hole extending from

said proximal surface of said bone plate to said distal surface, said pin hole being configured to

accept a temporary fixation member" as required by claim 17 of the '751 patent:

73



**Holding Taks™**
The OsteoMed **FPS™** Holding Taks- can be inserted into the plate holes with a wire/
pin driver to temporarily fixate the plate. Long K-wire ends can be burdensome to bend
or work around. Holding Taks- can be cut at the end of the head after insertion to
provide more visibility and space in the surgical site. The Holding Taks- can be removed
by rotating and pulling on the knurled head either by hand or with an appropriate instrument.

Exhibit 7, FPS$^{TM}$ Foot Plating System Surgical Technique Guide at p. 19.




Exhibit 7, FPS$^{TM}$ Foot Plating System Surgical Technique Guide at p. 30; Exhibit 6, FPS$^{TM}$ Foot

Plating System Brochure at p. 4.

165. OsteoMed has committed and continues to commit all of the above acts of infringement without license or authorization.

166. The requirements of 35 U.S.C. §287 have been met with respect to the '751 patent.

167. As a result of OsteoMed's infringement of the '751 patent, Howmedica and SEOH have suffered damages and will continue to suffer damages. Howmedica and SEOH are entitled to recover damages adequate to compensate for OsteoMed's infringement.

168. The injury to Howmedica and SEOH is irreparable and will continue unless and until OsteoMed is enjoined from further infringement. OsteoMed's wrongful conduct has caused and will continue to cause Howmedica and SEOH to suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using, selling, offering to sell, and/or importing Howmedica and SEOH's patented inventions. On information and belief, OsteoMed and others will continue to infringe the '751 patent unless permanently enjoined by the Court. Unless a permanent injunction is issued enjoining OsteoMed and its agents, servants, employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the '751 patent, Howmedica and SEOH will be greatly and irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Stryker, Howmedica, and SEOH respectfully pray for the following relief:

A. A declaration that Stryker and Howmedica do not infringe and have not infringed any claim of the '608 patent;

B. A declaration that the '608 patent is invalid;

C. A declaration that Stryker and Howmedica do not infringe and have not infringed any claim of the '776 patent;

D. A declaration that the '776 patent is invalid;

75

E.  A declaration that Stryker and Howmedica do not infringe and have not infringed any claim of the '716 patent;

F.  A declaration that the '716 patent is invalid;

G.  A declaration that Stryker and Howmedica do not infringe and have not infringed any claim of the '085 patent;

H.  A declaration that the '085 patent is invalid;

I.  An injunction against OsteoMed from asserting that Stryker, Howmedica, or Stryker's or Howmedica's officers, agents, representatives, and/or customers have infringed or are infringing any claim of the '608 patent;

J.  An injunction against OsteoMed from asserting that Stryker, Howmedica, or Stryker's or Howmedica's officers, agents, representatives, and/or customers have infringed or are infringing any claim of the '776 patent;

K.  An injunction against OsteoMed from asserting that Stryker, Howmedica, or Stryker's Howmedica's officers, agents, representatives, and/or customers have infringed or are infringing any claim of the '716 patent;

L.  An injunction against OsteoMed from asserting that Stryker, Howmedica, or Stryker's or Howmedica's officers, agents, representatives, and/or customers have infringed or are infringing any claim of the '085 patent;

M.  A judgment that U.S. Patent No. 9,078,713 is valid, enforceable, and infringed by OsteoMed;

N.  A judgment that U.S. Patent No. 9,168,074 is valid, enforceable, and infringed by OsteoMed;

76

O.    A judgment that U.S. Patent No. 10,993,751 is valid, enforceable, and infringed by OsteoMed;

P.    A permanent injunction against OsteoMed from infringing, inducing infringement, and/or contributing to the infringement of U.S. Patent No. 9,078,713;

Q.    A permanent injunction against OsteoMed from directly infringing U.S. Patent No. 9,168,074;

R.    A permanent injunction against OsteoMed from directly infringing U.S. Patent No. 10,993,751;

S.    An award of all damages, together with interest and costs, for OsteoMed's infringement of U.S. Patent Nos. 9,078,713, 9,168,074, and 10,993,751;

T.    A judgment that this case is exceptional and an award to Stryker, Howmedica, and SEOH of its costs, expenses, and reasonable attorney's fees under 35 U.S.C. § 285 and all other applicable statutes and rules in common law that would be appropriate, with pre- and post-judgment interest thereon; and

U.    That Stryker, Howmedica, and SEOH be awarded such other and further relief as this Court may deem just and appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Defendants and Counterclaim-Plaintiffs hereby demand a trial by jury on all issues so triable.


Dated:  May 28, 2021                                    McANDREWS, HELD & MALLOY, LTD.


                                                        /s/ *Robert A. Surrette*
                                                        Robert A. Surrette (IL Bar No. 6243979)

77

Sharon A. Hwang (IL Bar No. 6217211)
Scott P. McBride (IL Bar No. 6256356)
Ashley M. Ratycz (IL Bar No. 6330321)
500 W. Madison Street, Suite 3400
Chicago, IL 60661
(312) 775-8000
bsurrette@mcandrews-ip.com
shwang@mcandrews-ip.com

*Attorneys for Defendant Stryker Corporation, Counterclaim-Plaintiff Stryker European Operations Holdings LLC, and Defendant and Counterclaim-Plaintiff Howmedica Osteonics Corp.*

78